UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ADVANCE TRUST & LIFE ESCROW                  :
SERVICES, LTA AS NOMINEE OF LIFE             :
PARTNERS POSITION HOLDER TRUST,              :
and JAMES KENNEY, on behalf of               :
themselves and all others similarly situated,:
                                             :
                    *Plaintiffs*,            :    18 Civ. 3444 (PAC)
                                             :
        -against-                            :
                                             :    **OPINION & ORDER**
PHL VARIABLE LIFE INSURANCE                  :
COMPANY,                                     :
                                             :
                    *Defendant.*             :
-------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant PHL Variable Insurance Company ("PHL" or "Defendant") moves to dismiss for want of personal jurisdiction the class action brought by Texas trust Advance Trust & Life Escrow Services, LTA, as Nominee of Life Partners Position Holder Trust ("Advance Trust") and individual Plaintiff James Kenney, on behalf of themselves and others similarly.[1] Plaintiffs own life insurance policies issued by PHL and contend that PHL's most recent cost of insurance ("COI") adjustment, announced in 2017 (the "2017 COI Increase"), is excessive and unlawful. Although at least some of the Plaintiffs in this action, including the named Plaintiffs, will not have to pay the 2017 COI Increase until after 2020 as a result of a previous settlement, they maintain that the 2017 COI Increase has caused them immediate harm and injury and seek to enjoin its

---

[1] After Defendant's motion was fully briefed, Plaintiffs filed an Amended Class Action Complaint adding Plaintiff James Kenney as a party and incorporating additional changes. (Dkt. 58). By letter dated November 27, 2018, the parties stipulated that PHL's motion to dismiss would apply to the Amended Complaint without the need for additional briefing or responsive pleadings. (Dkt. 59).

implementation. For the reasons set forth below, PHL's motion to dismiss for want of personal jurisdiction is DENIED.

## BACKGROUND

According to the well drafted allegations of the Amended Class Action Complaint,[2] PHL is an insurance corporation organized under the laws of Connecticut which issues PHL Accumulator Universal Life ("PAUL") policies. (Amended Compl., Dkt. 58, ¶¶2, 14). The named Plaintiffs are Advance Trust, which owns eleven PAUL policies, and James Kenney, an individual who owns a single PAUL policy. (*Id.* ¶¶ 12-13). The PAUL policies at issue are flexible-premium, universal life ("UL") policies which, unlike typical whole life insurance policies, do not require fixed monthly premium payments. (*Id.* ¶ 18) Instead, the premium payments for the PAUL policies need only be sufficient to cover the COI charges and certain other specified expenses. (*Id.*) While the entire COI charge is forfeited to PHL each payment period, policyholders also have the option to pay more than the COI into the "Policy Account" and earn interest on any excess payment. (*Id.*) This structure allows policyholders to minimize their capital investment and make investment decisions based on the interest rate environment, but it also means that COI rate is closely related to the policies' value. (*Id.* ¶¶ 18-19). Plaintiffs allege that an increase in the COI rate not only makes maintaining an individual PAUL policy more expensive, but also diminishes the overall value of the policy and induces "shock lapses," or a large percentage of policies lapsing, which ends up being highly profitable for PHL. (*Id.* ¶¶ 19, 33).

The PAUL policies at issue each contain "substantively identical language" governing how COI rates are to be determined and periodically updated. (*Id.* ¶20). There are three variations on

---

[2] In deciding the motion to dismiss for want of jurisdiction, the Court takes as true the allegations in Plaintiffs' Amended Complaint and resolves all factual disputes in Plaintiffs' favor. *See Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *14 (S.D.N.Y. June 21, 2018).

2

the language of the policies, but all three set forth explicit factors upon which PHL will base a decision to adjust the COI rates. (*Id.* ¶¶ 20-22). The policies also require PHL to apply any rate increases "on a uniform basis for all insureds in the same class" or "on a basis that does not discriminate unfairly within any class of insureds." (*Id.*)

Prior COI Rate Increase Litigation

This is not the first time PHL has faced legal challenges as a result of a COI rate increase to its PAUL policies. (*Id.* ¶¶ 25-33). In March 2010, PHL and its New York sister company, Phoenix Life Insurance Company ("PLIC"), implemented a COI increase in 2010 for a subset of PAUL policies. (*Id.*) The New York Department of Financial Services, California Department of Insurance, and the Commissioner of Insurance for the State of Wisconsin ultimately concluded this 2010 increase was unlawful. (*Id.* ¶¶ 25-29). In 2011, PHL and PLIC again announced a COI rate increase and this time, a class action lawsuit was filed challenging both the 2011 and 2010 rate increases in the Southern District of New York. *Fleisher, et al. v. Phoenix Life Ins. Co., et al.*, Case No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015). (*Id.* ¶ 31). Three years later, another class action lawsuit was filed challenging PHL's COI rate increases. *SPRR LLC v. PHL Variable Insurance Company*, No. 14-cv-8714 (CM) (S.D.N.Y.) ("SPRR"). (*Id.*). These actions were joined and ultimately settled (the "*Fleisher/SPRR* settlement"). (*Id.*) As part of the settlement agreement, PHL agreed not to raise the COI rate on the PAUL policies of affected class members through and including December 31, 2020. (*Id.* ¶ 31).

Nassau Re's Acquisition of PHL and Subsequent 2017 COI Increase

In June 2016, PHL and PLIC were sold to a private equity firm, Nassau Reinsurance Group Holdings, L.P. ("Nassau Re"). (*Id.* ¶ 40) While Nassau Re's principal place of business is contested, merger documents filed with Connecticut regulators in connection with this sale list

3

"450 Park Avenue, 24th Floor, New York, New York 10022" as the business address for Nassau Re and for all affiliated Nassau companies. (*Id.* ¶ 16). As a result of this acquisition, PHL's two most senior officers, President Philip Gass and Vice President and Secretary Kostas Cheliotis, spend at least some part of a typical work week in Nassau Re's New York City Office, now located on Fifth Avenue, and PHL employees use "@nsre.com" as the domain name for their email addresses. *(Id.)*

Fourteen months after PHL was purchased by Nassau Re, in August 2017, PHL and PLIC sent a letter to PAUL policyholders announcing a third COI rate increase "on certain [PAUL] and Phoenix Estate Legacy policies." (*Id.* ¶¶ 41-42). The letters announcing the 2017 COI Increase contain PHL letterhead which lists a New York address for PHL. (*Id.* ¶ 16). The letter further describes PHL as "A Nassau Re Company" and provides a New York return mailing address. (*Id.*) While the specific rate increase was not provided, the 2017 letter advised, "[t]here will be an overall increase to cost of insurance rates, as well as progressive increases to cost of insurance rates beginning when an insured reaches age 71 through age 85." (*Id.* ¶ 42). Through subsequent disclosures, Plaintiffs learned that the 2017 COI Increase is to be implemented in three stages:

> (1) on the first policy anniversary following November 5, 2017 for certain PAUL and [PHL] Estate Legacy ("PEL") policies that were not part of the [*Fleisher/SPRR*] settlement class, (2) "after December 31, 2020" for policies that were part of the [*Fleisher/SPRR*] settlement class, and (3) for other policy owners, [PHL] will impose the 2017 COI Increase on December 31, 2020 but then rebate to those policyholders the amount of the increase.

(*Id.* ¶ 5).

Notably, the 2017 COI increase does not apply to PHL's New York sister company PLIC, even as the PAUL and PEL policies issued by the two entities are identical. (Id. ¶ 9). Plaintiffs allege this was done intentionally to avoid scrutiny from the New York Department of Financial Services ("NYDFS"), which regulates PLIC, and which has recently become an active regulator

4

in monitoring unlawful COI increases. (*Id.*)

Plaintiffs filed this action in the Southern District of New York on April 19, 2018, alleging breach of contract and seeking declaratory and injunctive relief. (Dkt. 1). Plaintiffs allege that the COI 2017 Increase violates the terms of the PAUL policies because it unfairly discriminates within a class of insureds, is not based on any of the PAUL policies' enumerated factors, and was actually implemented to "increase profits, recoup past losses, and earn a return on Nassau Re's investment," (Amended Compl. ¶ 57), a motive the policies expressly prohibit.

## DISCUSSION

### I. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

#### A. Legal Standard

##### i. Fed. R. Civ. P. 12(b)(2)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). The court may consider affidavits outside the plaintiff's complaint, but "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *14 (S.D.N.Y. June 21, 2018). Where the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor." *Id.; see also Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 WL 1399343, at *4 (S.D.N.Y. Mar. 16, 2018).

"At the pleading stage—and prior to discovery—a plaintiff need only make a *prima facie* showing that jurisdiction exists." *Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *13 (S.D.N.Y. June 21, 2018). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d

5

68, 81 (2d Cir. 2018) (internal citation and quotation marks omitted). Where no evidentiary hearing has been conducted, the plaintiff must only allege "facts that, if credited, would suffice to establish that jurisdiction exists." *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 622 (S.D.N.Y. 2015).

### ii. Personal Jurisdiction

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001). Under New York law, establishing personal jurisdiction requires satisfying the requirements of either the state's general jurisdiction statute, N.Y. C.P.L.R. § 301, or its long-arm jurisdiction statute, N.Y.C.P.L.R. § 302(a). Where personal jurisdiction is satisfied under New York's jurisdictional statutes, the court must also confirm that the exercise of personal jurisdiction comports with the Due Process Clause of the U.S. Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

The exercise of jurisdiction over non-domiciliary defendants is constitutional where defendants have "certain minimum contacts" with the forum state and the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." *Metro Life*, 84 F.3d at 577 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Second Circuit has stated it would be "rare" and "unusual" for New York's long-arm statute to be satisfied, but not the Due Process Clause. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013); *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015) ("Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met.").

6

## B. Analysis

Plaintiffs have alleged facts sufficient to demonstrate specific jurisdiction over PHL. New York's long arm statute permits a New York court to exercise personal jurisdiction over a defendant "who in person or through an agent...transacts business within the state or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R. § 302(a). This language requires two things: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 CIV. 8677 (AT), 2018 WL 3407702, at *4 (S.D.N.Y. Feb. 7, 2018) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Satisfying the second prong "does not require a causal link between the defendant's New York business activity and a plaintiff's injury, but rather a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Id.* at *7 (internal quotation omitted).

Plaintiffs allege that the decision to implement the 2017 COI Increase was made in New York, thus establishing a direct link between Plaintiffs' breach of contract claim and PHL's New York business conduct. According to Plaintiffs, "'while [PHL] maintains a statutory home in Connecticut for regulatory purposes, its senior executives are located in and all major decisions, including the decision to raise COI rates on the [PAUL policies], are made from Nassau Re's New York City headquarters." (Amended Compl. ¶ 16). To support this jurisdictional allegation, Plaintiffs point to the address included in the letters announcing the 2017 COI Increase, Nassau Re's purchase of PHL and subsequent intent to take control of PHL's life insurance policies, and the New York work location of PHL's top officers. (*See id.*)

The notices alone are likely sufficient to subject PHL to New York's jurisdiction. *See, e.g.*, *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (basing

7

jurisdiction on letters sent to New York where those letters were "directly related to" the plaintiff's claim); *Weinar v. Lex*, No. 13 Civ. 1511(DAB), 2014 WL 325698, at *4 (S.D.N.Y. Jan. 23, 2014) ("Courts applying New York's long-arm statute 'may look to factors such as . . . letterheads showing a New York address.'"). PHL does not dispute that the notices sent to policyholders announcing the 2017 COI Increase were sent on PHL letterhead, listing a New York address for PHL, and providing a New York return address. (*See* Declaration of Thomas Buckingham ("Buckingham Decl."), Dkt. 34, ¶ 10). Subsequent affidavits and exhibits from both parties further establish that some of these letters were actually mailed out from PHL's New York office, that New York based policyholders were among the recipients of these mailings, and that specific guidance relating to the 2017 COI Increase was deployed to PHL's New York office to aid employees in responding to customer inquiries. (*See id.*; Declaration of Michael Adamson ("Adamson Decl."), Dkt. 40, Ex. 11 at 1). Indeed, to a policyholder who received this notice, New York would appear to be the only relevant jurisdiction.

Notices aside, Plaintiffs' allegation that Nassau Re, operating from New York, was the true driver behind PHL's most recent COI increase clearly suffices to establish personal jurisdiction in New York. *Bradley v. Staubach*, No. 03 Civ. 4160(SAS), 2004 WL 830066, at *6 (S.D.N.Y. Apr. 13, 2004) (finding jurisdiction where New York corporate officer was "key figure" in transaction subject to plaintiff's claim.); *see also In re Refco Inc. Sec. Litig.*, Nos. 07-md-1902 (JSR), 08-cv-7416 (JSR), 2012 WL 12906289, at *14 (S.D.N.Y. Aug. 10, 2012). PHL argues that Nassau Re is actually headquartered in Connecticut, not New York, but this is rebutted by their own 2016 merger documents, which list a New York address as Nassau Re's "business address," (Amended Compl. ¶ 16; Adamson Decl., Ex. 1 at 3, 5) and declarations showing that PHL's two most senior officers spend at least part of the work week in Nassau Re's New York office. (Declaration of

8

Kostas Cheliotis ("Cheliotis Decl."), Dkt. 35, ¶¶ 7-8).

The Court also must accept as true Plaintiffs' allegation that Kostas Cheliotis, one of only two officers who made the final decision to approve the 2017 COI Increase, did so while in New York.[3] PHL further concedes that the deputy general counsel who provided legal advice on the decision works in Nassau Re's New York office. (Cheliotis Decl. ¶ 15). While PHL contends that the research and work that went into assessing the 2017 COI Increase was largely done by Connecticut-based employees and a third-party vendor based in Chicago, (Buckingham Decl. ¶ 7), there is no requirement that every act at issue in a claim stem from the forum state. *See Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 282 (E.D.N.Y. 2016). Plaintiffs' supported allegations that a major decisionmaker behind the 2017 COI Increase was based in New York is sufficient to support a finding of personal jurisdiction.

Consistent with the law in this Circuit, holding that Plaintiffs' allegations satisfy New York's long-arm statute also supports the conclusion that the exercise of personal jurisdiction here is constitutional. *See, e.g., Artists Rights Enf't Corp. v. Jones*, 268 F. Supp. 3d 491, 494 (S.D.N.Y. 2017). PHL has clearly availed itself of New York through the business it conducts with New York residents, its New York customer service center, and its close working affiliation with Nassau Re's New York office. (*See* Adamson Decl., Ex. 6). PHL argues that regardless of whether the minimum contacts test is satisfied, the exercise of personal jurisdiction here is nonetheless unreasonable because none of the Plaintiffs in this action are New York residents. (PHL's Reply, Dkt. 43, at 2). But that is not the issue; rather it is the Defendant's substantial New York conduct

---

[3] In his declaration, Cheliotis is unable to recall where he was when he made this decision, stating, "I may have been in Connecticut, New York, or another location." (Cheliotis Decl. ¶ 13). His declaration does clearly establish, however, that he resides principally in New York, spends at least one day a week in Nassau Re's New York office, and that he also often works remotely, although he fails to specify from where he does so. (*Id.* ¶ 7).

which convinces the Court that the exercise of personal jurisdiction over PHL is both constitutional and reasonable.[4] Taking Plaintiffs' undisputed and supported allegations as true, it is clear that Plaintiffs have more than satisfied their *prima facie* burden.

## II. Request to Transfer *Sua Sponte*

For the first time on reply, PHL also suggests that even if this Court determines it has personal jurisdiction over the Defendant, it should nonetheless *sua sponte* transfer this case to Connecticut pursuant to 28 U.S.C. § 1404(a) because "the District of Connecticut is clearly the superior venue for this action." (Def's Reply, Dkt. 43, at 10). The Court declines PHL's suggestion to transfer this action for the same reasons which guide its finding of personal jurisdiction.[5]

## CONCLUSION

For the above stated reasons, Defendant's motion to dismiss is DENIED. The Clerk of the Court is instructed to close the motion at Dkt. 31.

Dated: New York, New York
      March 12, 2019

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

---

[4] PHL cites to *Sherwin-Williams Co. v. C.V.*, No. 14-CV-6227(RA), 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016) to support its position that the exercise of jurisdiction here is unreasonable. In *Sherwin-Williams*, however, the defendant was a Mexican-based company and the court found New York had no interest in the outcome of the litigation. *Id.* PHL, by contrast, is headquartered in Connecticut and PHL's officers commute to New York weekly. New York also has an interest in this litigation given that PHL's previous settlement agreement, which impacts the Plaintiffs in this action, was negotiated in New York and PHL's side agreements with financial institutions relating to the 2017 COI Increase are governed by New York law. (*See* Adamson Decl., Exs. 8, 11).

[5] In 2011, PHL successfully argued to have a case challenging its 2011 COI increase transferred from California to the Southern District of New York. (Adamson Decl., Ex. 4). While the Court does not hold PHL to statements made in this motion for purposes of personal jurisdiction, given the subsequent change in controlling law, *see Daimler AG v. Bauman*, 571 U.S. 117 (2014), PHL's statements as to why New York was a superior venue are noteworthy as they relate to PHL's transfer request. For instance, PHL argues in the 2011 motion that "decisions regarding the cost of insurance rates were made at [PHL's] corporate offices in Connecticut *or New York*," (*id.* at 11) (emphasis added), and that its material witnesses, including its own corporate officers, are either in New York or "easily transported there," considering "their proximity to the Southern District of New York," (*id.* at 11-12).