## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCE TRUST & LIFE ESCROW SERVICES, LTA, AS NOMINEE OF LIFE PARTNERS POSITION HOLDER TRUST, and JAMES KENNEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:18-cv-03444 (PAC)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL MILLIMAN, INC. TO PRODUCE <u>ACTUARIAL SOFTWARE AND MODELS</u>

## [REDACTED]

6768659v1/015734

**TABLE OF CONTENTS**

I.     BACKGROUND ............................................................................................. 2

       A.     Milliman Markets MG-ALFA as the Industry-Leading Actuarial Software .......... 2

       B.     Milliman Provides a Full License and Training for MG-ALFA in *AXA COI* ........ 4

       C.     Milliman Now Refuses to Provide Plaintiffs with a Comparable License ............. 7

II.    ARGUMENT ................................................................................................. 9

       A.     The Native Actuarial Modeling Files and Software Milliman and Phoenix   Used
              for the COI Increase are Highly Relevant to Plaintiffs' Case ................................ 9

       B.     Like Plaintiffs in *AXA COI*, Plaintiffs Here Cannot Reasonably Use the MG-
              ALFA Native  Data Files Without Full Access to the MG-ALFA Software ........ 11

       C.     Milliman Has No Justification to Deny Plaintiffs Full Access to MG-ALFA ..... 15

       D.     Milliman is Seeking an Improper Discovery Advantage for its Clients ............... 16

III.   CONCLUSION ................................................................................................ 17

6768659v1/015734

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brach Family Foundation, Inc. v. AXA Equitable Life Insurance Company*,
   Case No. 16-cv-740 (JMF) (S.D.N.Y.)................................................................................1, 17

*In re: Lincoln National COI Litigation*,
   16-cv-6605-GJP, Dkt. 129 (E.D. Pa. July 19, 2019) .............................................................11

**Rules**

Fed. R. Civ. P.  26 ..............................................................................................................9, 11

Fed. R. Civ. P. 34 ........................................................................................................1, 11, 14

Fed. R. Civ. P. 34(b)(2)(E) ...................................................................................................11, 14

**Other Authorities**

Cision PR Newswire Dec. 22, 2015...........................................................................................2

, https://www.prnewswire.com/news-releases/actuarial-post-names-millimans-
   mg-alfa-best-2015-actuarial-software-300196127.html (last visited August 7,
   2019) ........................................................................................................................................2

MG-ALFA Brochure,
   http://www.milliman.com/uploadedFiles/Solutions/Products/mg-alfa-
   brochure.pdf (last visited August 7, 2019)...............................................................................2

MG-ALFA, http://www.milliman.com/mg-alfa/ (last visited August 7, 2019).........................2, 14

Milliman, *Actuarial Post names Milliman's MG-ALFA best 2015 actuarial*
   *software*....................................................................................................................................2

Press Release, *Milliman Launches MG-ALFA® in the Cloud* (June 12, 2012),
   www.milliman.com/WorkArea/DownloadAsset.aspx?id=68537 (last visited
   August 7, 2019)........................................................................................................................2

Video, *MG-ALFA Model Development*,
   http://www.milliman.com/Solutions/Products/MG-ALFA-Model-
   Development/ (last visited August 7, 2019) .............................................................................2

Video, *The Phoenix Group and Milliman: A revolution in the cloud*,
   http://www.milliman.com/insight/videos/ The-Phoenix-Group-and-Milliman-
   A-revolution-in-the-cloud/ (last visited August 7, 2019) ...................................................14, 15

Actuarial consulting firm Milliman, Inc. ("Milliman") was hired by Defendant PHL Variable Insurance Company ("Phoenix") to model, analyze, and develop a recommendation to impose the cost-of-insurance ("COI") increase at issue in this case. Milliman now refuses to produce the extremely relevant MG-ALFA software that Milliman relied on to model that increase in a usable form, as required by Federal Rule of Civil Procedure 34. Instead of producing this key information in a usable form, and notably the form used by Milliman in its normal course of business, Milliman insists on producing only a crippled version of the software that would allow plaintiffs to "view" files, but not otherwise "use" the software. But having access "solely to view" the COI increase models' outputs is like having only the published financials at Enron, without any means to determine what money was (or wasn't) going where and how each input affects each output—facially informative, but ultimately misleading.

This position is improper, a fact Milliman well knows having waged and lost this exact battle in the *AXA COI* Litigation. In that case, just like here, Milliman was hired by the carrier to model and analyze the COI increase. After Milliman initially refused, just like here, to allow plaintiffs to *use* the MG-ALFA software that Milliman used to model that COI increase, Judge Furman stated it was "obvious" that "plaintiffs need to be given access to the relevant data *in a way that meaningfully enables them to use it*."[1] Milliman then (i) stipulated to a license that allowed plaintiffs to "access, view and use" the MG-ALFA software, and (ii) sent a representative to New York to train plaintiffs' experts over the course of two days in how to not just view, but also use the MG-ALFA software to, for example, run models, modify assumptions, and test alternative scenarios – the exact same functionality that plaintiffs seek here, using the

---

[1] *See Brach Family Foundation, Inc. v. AXA Equitable Life Insurance Company*, Case No. 16-cv-740 (JMF) (S.D.N.Y.) ("*AXA COI*"), March 9, 2018 Hearing Transcript at 14, 17, Dkt. 198 (Mar. 22, 2018) (emphasis added). This transcript is attached as Exhibit C to the Declaration of Seth Ard ("Ard Decl."). Undersigned counsel is Court-appointed interim class counsel in both this action and in *AXA COI*.

same experts that Milliman already trained in *AXA COI*.

Because there is no justifiable basis for Milliman's attempt to back away from the position it eventually stipulated to in *AXA COI*, the Court should compel Milliman to provide access to its MG-ALFA software under the same terms and conditions that were utilized in *AXA COI*.

## I.   BACKGROUND

### A.   Milliman Markets MG-ALFA as the Industry-Leading Actuarial Software

MG-ALFA is financial projection software developed by Milliman that life insurance companies use to perform actuarial modeling and financial projections.[2] Along with using MG-ALFA internally in its actuarial consulting practice, Milliman also sells licenses for MG-ALFA to insurance and financial accounting firms worldwide.[3] Milliman markets MG-ALFA as the "market-leading financial modeling solution" and the MG-ALFA website and sales brochure tout MG-ALFA's unique performance and analytic capabilities that differentiate it from other actuarial software programs on the market.[4]

Actuaries use MG-ALFA due to the complexity of calculations underlying financials such as future anticipated premium payments, future death benefits, future recoveries from

---

[2] MG-ALFA, http://www.milliman.com/mg-alfa/ (last visited August 7, 2019); Press Release, *Milliman Launches MG-ALFA® in the Cloud* (June 12, 2012), www.milliman.com/WorkArea/DownloadAsset.aspx?id=68537 (last visited August 7, 2019).

[3] *See* June 12, 2012 Milliman Press Release (noting that MG-ALFA is "used by leading life insurance and financial firms worldwide to perform financial projections").

[4] *See, e.g.,* MG-ALFA, http://www.milliman.com/mg-alfa/ (last visited August 7, 2019); MG-ALFA Brochure, http://www.milliman.com/uploadedFiles/Solutions/Products/mg-alfa-brochure.pdf (last visited August 7, 2019); Video, *MG-ALFA Model Development*, http://www.milliman.com/Solutions/Products/MG-ALFA-Model-Development/ (last visited August 7, 2019); *see also* Milliman, *Actuarial Post names Milliman's MG-ALFA best 2015 actuarial software* (Cision PR Newswire Dec. 22, 2015) ("Pat Renzi, principal at Milliman, says, 'We are honored that MG-ALFA was recognized for its excellence, particularly because the decision was based on a response and opinion from the market. We believe that MG-ALFA can provide even more opportunity for insurers and, moving forward, we're excited to make MG-ALFA the central calculation engine encapsulated in our end-to-end solution Integrate®.'"), https://www.prnewswire.com/news-releases/actuarial-post-names-millimans-mg-alfa-best-2015-actuarial-software-300196127.html (last visited August 7, 2019).

reinsurers, and future monetary reserve requirements.[5] In the universal life insurance context, actuaries can use MG-ALFA's modeling and projection capabilities to run models that are then used in the analysis of a COI rate increase. ██████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████.[6]

        ████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

        ████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

---

[5] *See* Declaration of Philip J. Bieluch ("Bieluch Decl.") ¶ 6.
[6] *See* Exhibit 2 to the Adamson Declaration in support of the Motion for Interim Lead, Dkt. 78-2 (filed under seal); *AXA COI*, Letter Motion for Conference Regarding MG-ALFA, Dkt. 174 (Mar. 2, 2018) (describing background of dispute over MG-ALFA). For ease of reference, this letter-motion is attached as Exhibit A to the Ard Declaration.
[7] *See* Bieluch Decl. ¶ 5.
[8] *See* Declaration of James Rouse ("Rouse Decl.") ¶¶ 6–8; Bieluch Decl. ¶¶ 6.
[9] *See* Rouse Decl. ¶ 9.
[10] *See id.* ¶ 7; Bieluch Decl. ¶ 8.
[11] *See* Bieluch Decl. ¶¶ 7, 9; Rouse Decl. ¶¶ 7, 9, 23.

███████████████████████████████████████████████████████.[12]

## B.      Milliman Provides a Full License and Training for MG-ALFA in *AXA COI*

In *AXA COI*, plaintiffs (also represented by undersigned counsel) sought documents from Defendant AXA and third-party Milliman related to the modeling and financial projections that were the alleged grounds for AXA's COI increase. While, as is the case here, neither AXA nor Milliman contested the obvious relevance of this information,[13] they nonetheless informed plaintiffs that certain responsive documents were only accessible with Milliman's MG-ALFA software, which AXA had licensed from Milliman. Milliman then refused to provide plaintiffs with a usable copy of MG-ALFA. Because plaintiffs could not use the files without MG-ALFA, plaintiffs raised the issue with the court, explaining that Milliman's refusal to produce a usable copy of MG-ALFA was incompatible with Federal Rule of Civil Procedure 34's requirement that electronically stored information ("ESI") be produced in a "reasonably usable" form.[14]

Considering the issue at a March 9, 2018 hearing, Judge Furman recognized that plaintiffs sought "access to data that is clearly relevant for the purposes of this litigation" and said it was "obvious" that "plaintiffs need to be given access to the relevant data *in a way that meaningfully enables them to use it*."[15] The court then gave the parties a short period of time to try to work out their dispute, or if not, raise any remaining dispute promptly to the Court.

After the hearing, Milliman *agreed* to enter into a stipulation and protective order that allowed the plaintiffs to use MG-ALFA to review the MG-ALFA native files *and* use MG-

---

[12] *See* Rouse Decl. ¶ 26; Bieluch Decl. ¶ 8. ████████████████████████████████████
████████████████████████████████████████    *See* Rouse Decl. ¶ 26.
[13] *See AXA COI*, Letter Response in Opposition to Motion, Dkt. 182 (S.D.N.Y Mar. 7, 2018) (Milliman's letter opposition to motion for conference not contesting relevance).This letter is attached as Exhibit B to the Ard Declaration.
[14] *See* Ard Decl., Ex. A (*AXA COI* Letter Motion).
[15] *See* Ard Decl., Ex. C at 14, 17 (3/9/18 *AXA COI* Hearing Transcript) (emphasis added).

ALFA to run their own projections using different assumptions and scenarios.[16] Contrary to Milliman's representations in this action that the *AXA COI* license was somehow a "view-only" license, the stipulated Milliman license permitted plaintiffs to make full use of that software, and even required Milliman to help resolve any technical difficulties that may arise in plaintiffs' use of MG-ALFA to "access, view**, *and use***" the modeling files and input data, and to "***reproduce*** AXA's modeling results."[17] The full provision that Milliman agreed to in *AXA COI*– which Milliman seeks to delete from its proposed license in this case – is as follows (emphases added):

> 20. The parties agree to meet and confer in good faith to resolve, subject to paragraph 11 and 13, any technical difficulties that may arise in making Use of the Proprietary Software to access, view, and use relevant financial modeling files and associated input data as they were maintained by AXA in the ordinary course of business, including difficulties in making Use of the Proprietary Software to reproduce AXA's modeling results.

And critically, the *AXA COI* license does not include the "Grant of Limited License" provision (limiting Plaintiffs to "solely to view" access") that Milliman now seeks to add here.[18]

Further eliminating any doubt as to what Milliman stipulated to in the *AXA COI* matter, Milliman subsequently provided MG-ALFA training over two days to the plaintiffs' experts (James Rouse, co-founder of Demeter Investments, specialists in the longevity market, and Phil Bieluch, Fellow of the Society of Actuaries) at Susman Godfrey's New York office. The following is the cover page of one of the four training guides provided to Mr. Bieluch and Mr. Rouse at the training:

---

[16] *See AXA COI*, Stipulation and Supplemental Protective Order Regarding ThirdParty Milliman, Inc's MG-ALFA Software § 2, Dkt. 195 (Mar. 20, 2018). This protective order is attached as Exhibit D to the Ard Declaration.
[17] *See id.* § 20 (emphases added).
[18] *Compare* Ard Decl., Ex. C (*AXA COI* Protective Order), *with* Ard Decl., Ex. G § 2 ("Grant of Limited License" provision in Milliman's proposed license in this matter).



*See* Bieluch Decl. ¶ 12, Exs. 1–4 (Milliman MG-ALFA training materials). ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ [20]

     As detailed in the attached declarations from plaintiffs' experts, Milliman sent a corporate representative to New York to provide two days of training on MG-ALFA. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[19] *See* Bieluch Decl., Ex. 2.
[20] *See id.*, Ex. 1.



Using that training, in *AXA COI*, plaintiffs' experts submitted expert reports on the merits and in support of class certification that made use of the MG-ALFA software.[23] Plaintiffs here seek to use that same functionality – which they were trained to do by Milliman in AXA, but which Milliman now is trying to prevent them from doing here.

### C.    Milliman Now Refuses to Provide Plaintiffs with a Comparable License

In late 2016, Phoenix's general counsel hired Milliman to model and analyze a potential COI increase for universal life policies at issue in this case. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████[25]

Milliman's COI increase recommendation was approved by Phoenix and implemented in August 2017.[26]

Plaintiffs filed suit regarding this increase in April 2018. Plaintiffs alleged that this increase was improper on a number of grounds, including that the COI increase was not calculated through an actuarially reasonable methodology," was not based on enumerated policy

---

[21] *See* Bieluch Decl. ¶ 10–16; Rouse Decl. ¶¶ 10–16.
[22] *See* Bieluch Decl. ¶ 16; Rouse Decl. ¶ 16.
[23] *See* Rouse Decl. ¶¶ 17–21.  The expert report of James Rouse is temporarily lodged under seal in *AXA COI*, and is attached as Exhibit 11 to the Nath Declaration in support of class certification.  *See AXA COI*, Dkt. 354 at ¶ 13 ("Attached hereto as Exhibit 11 is a true and correct copy of the expert report of James Rouse, served by Plaintiffs on May 17, 2019). Sealing applications are not yet currently due in *AXA COI* but will be filed by the end of September 2019.  *See id.*, Dkt. 361.
[24] *See* Dkt. 78-2 (Adamson Decl., Ex. 2) (filed under seal).
[25] *See id.*
[26] *See* Dkt. 32 at 10-11; Dkt. 58 (Am. Compl.) at ¶42.

factors, and was improperly designed to increase profits.[27] In December 2018, Plaintiffs served a document subpoena on Milliman.[28] This included specific requests for the data and models that Milliman and Phoenix claimed were the actuarial support for the COI increase:

- Request 1(a)—"All memoranda, analyses, white papers, charts, presentations, calculations, or any other DOCUMENTS CONCERNING the basis or reasons for the 2017 COI INCREASE and the amount thereof."

- Request 1(b)—"All assumptions, analysis, data, and scenarios CONCERNING or supporting any memoranda, analyses, white papers, charts, presentations, or calculations concerning the 2017 COI INCREASE."[29]

The subpoena defined "DOCUMENT" to include "software" and "software applications" (¶¶10–11). Plaintiffs further requested that all documents be produced "in a form that includes all data in native format."[30]

As in *AXA COI*, Milliman informed Plaintiffs that certain native files were generated by the MG-ALFA software.[31] In response, Plaintiffs asked for that software and sent Milliman the *AXA COI* protective order as a "helpful framework."[32] Milliman proposed a different license for MG-ALFA, which deviated materially from the *AXA COI* license. While the *AXA COI* plaintiffs are able to use MG-ALFA to analyze different assumptions and run alternative scenarios— including to "access, view and use" the files – the proposed license submitted by Milliman here deletes those provisions, and limits Plaintiffs to a "solely to view" access to MG-ALFA.[33] Over the next few months, Plaintiffs repeatedly sought to meet and confer with Milliman regarding

---

[27] *See* Dkt. 1 (Compl.), Dkt. 58 at ¶¶ 48–59, 72 (Am. Compl.).
[28] *See* Ard Decl., Ex. E (Milliman Subpoena).
[29] *See id.*
[30] *See id.*
[31] *See* Ard Decl., Ex. F (April 26, 2019 Email Chain).
[32] *See id.*
[33] *See* Ard Decl., Exs. F–G (April 26, 2019 Email Chain and Attachment).

this crucial and unexplained variance in the licenses.[34] After Milliman refused to alter its position, and then bizarrely insisted that Plaintiffs withdraw their subpoena and re-issue it so this dispute could be heard instead in the Western District of Washington (a meritless forum-shopping position it has since dropped),[35] Plaintiffs filed a pre-motion letter, Dkt. 98, and after the hearing on July 29, 2019, now this motion to compel.

## II.   **ARGUMENT**

### A.   The Native Actuarial Modeling Files and Software Milliman and Phoenix Used for the COI Increase are Highly Relevant to Plaintiffs' Case

Pursuant to Federal Rule of Civil Procedure 26, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rule 26 instructs that courts should consider, among other things, "the amount in controversy," and whether "the burden or expense of the proposed discovery outweighs its likely benefit." Here, the requested material is unquestionably highly relevant, ██ ███████████████████████████████████████████████, and there is no undue burden in producing the software. For these reasons alone, the requested material must be produced under Rule 26.

*First*, Plaintiffs seek access to highly relevant discovery—the native actuarial files and MG-ALFA software that (a) Milliman used to model, calculate, and justify its proposed COI increase, and (b) Phoenix relied upon when it adopted Milliman's COI increase recommendation. As Judge Furman recognized when considering a nearly identical request in *AXA COI*, these files and software are "clearly relevant for the purposes of this litigation."[36]

Plaintiffs may use the MG-ALFA files and software to establish many of the allegations

---

[34] *See* Ard Decl., Ex. H (July 5, 2019 Email Chain).
[35] *See* Ard Decl., Ex. K (July 23, 2019 Email Chain).
[36] Ard Decl., Ex. C at 17 (3/9/18 *AXA COI* Hearing Transcript).

in the Amended Complaint. For example, Plaintiffs allege that the COI Increase "was not based on actuarially reasonable assumptions [and] was not calculated through an actuarially reasonable methodology."[37] These challenged calculations were performed by MG-ALFA, so Plaintiffs may use the native files and software to show that Phoenix's and Milliman's increase methodology was actuarially improper.[38] Also, Plaintiffs allege that the COI Increase "breached the policies by determining COI rates based on factors not enumerated in the policies."[39] Plaintiffs may use the native files and MG-ALFA software to show that the enumerated factors in the policies, such as the mortality rate, did not in fact support raising the policies' COI rates.[40] Further, Plaintiffs allege that the COI Increase "breached the policies because it increases profits and recoups prior losses in violation of the terms of the policies and the implied covenant of good faith and fair dealing."[41] Milliman used MG-ALFA to calculate expected profitability, so Plaintiffs may use the native files and software to establish that the COI increase constituted an improper increase of Phoenix's profits.[42]

*Second*, there is no undue burden in producing the software. Milliman has *already* produced this same software in the *AXA COI* case to the same experts, and plaintiffs are not asking that they be re-trained. Further, Milliman already agrees to produce the software – albeit in crippled form – and there is zero burden in producing it in the way it is used in the ordinary course of business. Finally, plaintiffs have already agreed, at Milliman's request, to pay Milliman for any out-of-pocket costs Milliman incurs in making this software available. Milliman agreed and inserted a term regarding cost in its proposed license.

---

[37] Dkt. 58 (Am. Compl.) at ¶ 72(d)
[38] *See* Rouse Decl. ¶ 22.
[39] Dkt. 58 (Am. Compl.) at ¶ 72(b)
[40] *See* Rouse Decl. ¶ 22.
[41] Dkt. 58 (Am. Compl.) at ¶ 72(c)
[42] *See* Rouse Decl. ¶ 22.

*Third*, regarding the "amount in controversy," the stakes in this case are substantial.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████.[43] *See also In re: Lincoln National COI Litigation*, 16-cv-6605-GJP,

Dkt. 129 at 7 (E.D. Pa. July 19, 2019) (Opinion of the Special Master rejecting undue burden and

proportionality objection where alleged compliance cost was $315,000 because the amount in

controversy for the COI increase is "around $100 million").

Given the large stakes of this litigation, the centrality of this modeling software to the

COI increase analysis, and the lack of undue burden in producing it, the requested data should be

produced in a useable format as kept in the ordinary course of business.

**B.      Like Plaintiffs in *AXA COI*, Plaintiffs Here Cannot Reasonably Use the MG-ALFA Native Data Files Without Full Access to the MG-ALFA Software**

Milliman contends that it can meet its responsibilities in responding to a subpoena that

requests documents required to be produced under Rule 26 by producing a crippled version of

the software that it says is just as good. This argument is wrong.  First, Rule 26 does not allow

for substitute production of altered documents. Second, Milliman's proposal violates Rule 34.

The Federal Rules of Civil Procedure require electronically stored information ("ESI") to be

produced as it is "ordinarily maintained" in the "usual course of business" or another "reasonably

usable form." Fed. R. Civ. P. 34(b)(2)(E). An alternative form is improper if "it more difficult or

burdensome for the requesting party to use the information efficiently in the litigation." Advisory

Committee Notes to the 2006 amendment to Fed. R. Civ. P. 34. As Judge Furman recognized in

*AXA COI*, it is "obvious" under that Plaintiffs need to be "given access to [the MG-ALFA

---

[43] *See* Dkt. 58 (Am. Compl.); Dkt. 78-2 (Adamson Decl., Ex. 2) (filed under seal)

software and native files] in a way that meaningfully enables them to use it."[44]

In light of *AXA COI*, what constitutes a "reasonably usable form" is still obvious: Plaintiffs seek the exact same license as Milliman previously agreed to with the *AXA COI* plaintiffs. On class certification, summary judgment, and trial, Phoenix may rely on Milliman's modeling and calculations from MG-ALFA to argue that the COI increase was consistent with the policies' terms and general actuarial standards. Plaintiffs should have access to the same capabilities. Among other things, running projections should allow Plaintiffs to:



.[45]

The *AXA COI* license permitted Plaintiffs to perform all of these functions, and that license should likewise be used here.[46]

---

[44] Ard Decl., Ex. B at 14 (3/9/18 *AXA COI* Hearing Transcript).

[45] *See* Rouse Decl. ¶ 23.

[46] *See id.* ¶ 24. Milliman's pre-motion letter implies that Plaintiffs' counsel had previously agreed to a more restrictive license of MG-ALFA in *In re: Lincoln National COI Litigation*, No. 16-cv-06605-GJP (E.D. Pa.). Dkt. 102 at 2. This is false; as Milliman is well aware, the parties in that case also dispute the proper scope of the MG-ALFA license because there, like here, Milliman frivolously contends that the *AXA COI* license did not permit plaintiffs to use the software to run models (even though Milliman trained the AXA COI plaintiffs on exactly that). And in any event, the license provision that Milliman cites to in that matter—the user "shall not (i) modify or create any derivative work" from the MG-ALFA software—is unobjectionable here, as Plaintiffs do not intend to alter the

Milliman's proposed alternatives, by contrast, would not provide Plaintiffs with "reasonable use" of MG-ALFA and its native files because none of the proposed alternatives would allow Plaintiffs to effectively and accurately perform their own projections.

Milliman's proposed license would limit Plaintiffs to a static "solely to view" access of MG-ALFA. By its terms, this would prevent Plaintiffs from performing their own projections or testing the impact or propriety of the assumptions used in Milliman's modeling.[47] For example, if Plaintiffs are unable to test the impact of the various assumptions used by Milliman, Plaintiffs will be limited in their ability to test how using other assumptions would impact the COI increase. Similarly, if Plaintiffs cannot test alternative assumptions, they will be unfairly hindered in their ability to investigate whether Milliman's assumption values for the enumerated policy factors were actuarially reasonable. And losing the ability to perform their own projections would allow Milliman and Phoenix to conceal from Plaintiffs how profits were calculated and modeled. The static "solely to view" access does not, therefore, provide Plaintiffs with a reasonable use of the MG-ALFA software or the native files.

Milliman has also suggested that use of MG-ALFA should not be provided to Plaintiffs because they could use other actuarial software, even though Phoenix adopted Milliman's recommendation to raise COIs due to work performed on MG-ALFA.[48] Milliman's own website and marketing materials state that MG-ALFA is "unique," and it contends that MG-ALFA cannot be substituted by any other product on the market. For example, Milliman's website proclaims that MG-ALFA is "[t]he most robust actuarial modeling software platform available

---

software itself. Rather, Plaintiffs merely seek access that allows Plaintiffs to run projections and modify assumptions, in the same manner as the *AXA COI* plaintiffs and other Milliman MG-ALFA customers.

[47] *See* Rouse Decl. ¶¶ 23, 25.

[48] *See* Dkt. 32 at (Phoenix's Motion to Dismiss) ("In late 2016, [Phoenix] began working with actuaries at well-respected, third-party actuarial consulting firm Milliman . . . to analyze blocks of PAUL and PEL products and develop a recommendation on whether any nonguaranteed elements (e.g. COI rates) needed to be adjusted. The recommended 2017 COI Rate Adjustment was approved by [Phoenix].").

with the broadest set of built-in pricing and financial projection capabilities."[49] The website also highlights MG-ALFA's "innovative design" that "dramatically reduces project start-to-finish time when running complex [Asset/Liability Management] models."[50] Forcing Plaintiffs to use alternative software that Milliman acknowledges would dramatically *increase* "start-to-finish time" contravenes Rule 34's admonition that ESI must not be produced in a form that makes "it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." *See* Fed. R. Civ. P. 34(b)(2)(E); Advisory Committee Notes to the 2006 amendment to Fed. R. Civ. P. 34. ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ nor any good

reason to require all of these gymnastics in order to avoid a sensible, fair, symmetric apples-to-apples use of MG-ALFA that was used for the COI Increase at issue.

Finally, Milliman seeks to avoid having Plaintiffs use MG-ALFA as Milliman did by proposing producing to export the data into Microsoft excel files. But Milliman's own website describes how another carrier (The Phoenix Group, not affiliated with the Phoenix defendant here) transitioned to MG-ALFA after becoming concerned about the limits of Microsoft Excel's actuarial modeling and projection capabilities.[52] And the reasons above why alternative software to MG-ALFA is not workable apply equally, if not more so, to Microsoft Excel.

To effectively use Microsoft Excel, Plaintiffs' consultants would need to replicate the functionality of MG-ALFA. But the time and expense that fully and accurately replicating the

---

[49] MG-ALFA, http://www.milliman.com/mg-alfa/ (last visited August 7, 2019).
[50] *Id.*
[51] *See* Bieluch Decl. ¶ 7; Rouse Decl. ¶ 26.
[52] Video, *The Phoenix Group and Milliman: A revolution in the cloud*, http://www.milliman.com/insight/videos/The-Phoenix-Group-and-Milliman-A-revolution-in-the-cloud/ (last visited August 7, 2019).

features of MG-ALFA would entail would likely make this effort logistically infeasible.[53] And complications could arise from differences in calculations and modeling between Excel and MG-ALFA, meaning that Plaintiffs and Phoenix would need to engage in even more unnecessary investigation, analysis and discussion.[54] This is clearly inconsistent with Rule 34's principle that an alternative not be "more difficult or burdensome for the requesting party to use the information efficiently."

Milliman understands all of this—a video on its website features an executive from The Phoenix Group explaining why MG-ALFA is needed and excel on its own is insufficient:

> I wince a little bit when I see all of those spreadsheets. Excel has a role to play in any business, but I think it's got to be a balance. You don't want to drive your executive decision-support framework off the back of Excel. You want to make sure that you've driving it off the back of some proper systems, proper data, integrity—and ultimately something that's been tested to destruction.[55]

There is a reason Milliman promotes its MG-ALFA product so voraciously—it is a product that can do far more than Excel or other financial accounting products.

### C.    Milliman Has No Justification to Deny Plaintiffs Full Access to MG-ALFA

Milliman has failed to provide any plausible justification for denying Plaintiffs reasonable use of the MG-ALFA software.

Milliman recently provided this ***exact same license*** to the plaintiff in *AXA COI*. The discovery that Plaintiffs seek here is highly relevant, as the MG-ALFA calculations and modeling provided the main justification for Phoenix's COI increase. And providing this discovery will entail only minimal burden to Milliman. Because Plaintiffs will use the same consultants, Mr. Bieluch and Mr. Rouse, that were previously trained on MG-ALFA in *AXA*

---

[53] *See* Rouse Decl. ¶ 27.
[54] *See id.*
[55] Video, *The Phoenix Group and Milliman: A revolution in the cloud*, http://www.milliman.com/insight/videos/ The-Phoenix-Group-and-Milliman-A-revolution-in-the-cloud/ (last visited August 7, 2019) (quotation starts at the 1:10 mark of the video).

*COI*, Milliman will have to do little more than extend the license to Plaintiffs here.

Although there may be some minor costs in providing access to MG-ALFA, this does not render Plaintiffs' request "unduly burdensome." In *AXA COI*, Plaintiffs agreed to pay any costs incurred by Milliman in providing training or technical support to Plaintiffs' consultants.[56] But as Judge Furman noted, these costs should be cabined—providing the licenses should not be a "profit-generating thing for Milliman."[57] Plaintiffs understand Milliman to agree with this, as Milliman's proposed MG-ALFA license states: "Milliman shall not charge User any fees for use of the Proprietary Software in accordance with this Agreement. Training and support services are available on a time, materials, and transportation basis at Milliman's prices in effect at the time such services are provided."[58]

Nor can Milliman credibly claim that confidentiality issues justify withholding access. As Judge Furman explained in *AXA COI*, confidentiality is "really a non-issue" because Plaintiffs are not business competitors with Milliman and a protective order would be able to adequately address any confidentiality concerns.[59] Indeed, Milliman has already stipulated to a protective order in *AXA COI*,[60] and Plaintiffs are willing to stipulate to the exact same terms here. Plaintiffs, moreover, are not demanding that Milliman provide access some sort of a zealously-guarded secret sauce. Rather, Plaintiffs are merely seeking access to software that Milliman routinely licenses to dozens of other companies in the ordinary course of business.[61]

### D.    Milliman is Seeking an Improper Discovery Advantage for its Clients

The final paragraph of Milliman's pre-motion opposition letter makes clear Milliman's

---

[56] Ard Decl., Ex. C at 16–17 (*AXA COI* 3/9/18 Hearing Transcript).
[57] *Id.* at 16–17.
[58] *Id.*, Ex. G at ¶5 (Milliman's Proposed MG-ALFA License).
[59] *Id.*, Ex. C at 17 (*AXA COI* 3/9/18 Hearing Transcript).
[60] *See id.*, Ex. D (*AXA COI* Stipulation and Supplemental Protective Order).
[61] *See* Press Release, Milliman Launches MG-ALFA® in the Cloud (June 12, 2012) (noting that MG-ALFA is used by firms worldwide).

real motive—Milliman is trying to shield relevant discovery so it can sell future clients on the notion that hiring Milliman will give the client a litigation advantage.

Milliman's pre-motion letter speculates that, despite having already done so in *AXA COI*, providing the license that Plaintiffs' request "would harm [Milliman's] business because it could deter its customers from using the software in the future."[62] Reading between the lines, what Milliman is actually saying is that it wishes to market its services as a way for insurance companies to raise COI rates while shielding that analysis from discovery. █████████ █████████, and Milliman has now also claimed privilege over documents created during the COI increase analysis.[63] Milliman subsequently *deleted all files* relating to this project that were not contained in the final project file provided to Phoenix.[64] The Court should not countenance Milliman's improper attempt to use the discovery process to prevent use of MG-ALFA just in order to create an information asymmetry that favors its clients, especially in a case that specifically involves a COI increase recommended by Milliman that Phoenix imposed.

## III.   CONCLUSION

Plaintiffs request that the Court grant the motion and compel Milliman to provide access to its proprietary MG-ALFA software under the same terms and conditions that were utilized in *Brach Family Foundation, Inc., et al. v. AXA Equitable Life Insurance Company*, Case No. 16-cv-740 (JMF) (S.D.N.Y.), Dkt. 195.

Dated: August 7, 2019

/s/ Seth Ard
Seth Ard
Ryan Kirkpatrick (*pro hac vice*)

---

[62] Dkt. 102 at 3.

[63] *See* Dkt. 78-2 (Adamson Decl., Ex. 2) (filed under seal); Ard Decl., Ex. M (Milliman Privilege Log).

[64] *See* Ard Decl., Ex. J (7/10/19 Email Chain, from Milliman's counsel) ("Upon completion of any given project, however, all files relating to the project that are not contained in the final project file provided to the client are deleted per Milliman's ordinary course of business and business practice. Milliman does not keep destruction logs or records for such deleted non-final project file documents.").

SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel.: 212-336-8330
Fax: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Steven G. Sklaver (*pro hac vice*)
Davida Brook (*pro hac vice* pending)
Michael Adamson
Nicholas N. Spear (*pro hac vice* pending)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com
dbrook@susmangodfrey.com
nspear@susmangodfrey.com
madamson@susmangodfrey.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all parties through their counsel of record via the Court's CM/ECF system, on August 7, 2019.

*/s/ Seth Ard*
Seth Ard