UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ADVANCE TRUST & LIFE ESCROW,                          :
SERVICES, LTA, AS NOMINEE OF LIFE                     :
PARTNERS POSITION HOLDER TRUST and                    :
JAMES KENNEY, on behalf of themselves and all        :
others similarly situated,                            :    Case No. 18-cv-03444 (PAC)
                                       Plaintiffs,    :
                                                      :
                  -against-                           :
                                                      :
PHL VARIABLE INSURANCE COMPANY,                       :
                                                      :
                                       Defendant.     :
                                                      :
-------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO COMPEL MILLIMAN, INC. TO PRODUCE ACTUARIAL SOFTWARE AND MODELS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ................................................................................................................................... 2

I.      Background of Milliman and MG-ALFA ................................................................. 2

II.     The *AXA* Litigation ................................................................................................ 2

        A.      The Dispute Before Judge Furman ............................................................. 2
        B.      Milliman Trains the AXA Plaintiffs on How to View Its Models in MG-ALFA. . 4
        C.      Failure To Pay Milliman for Subsequent Conversion Work ......................... 5

III.    Subsequent COI Litigation ..................................................................................... 6

IV.     This Litigation ........................................................................................................ 6

ARGUMENT .......................................................................................................................... 7

I.      Plaintiffs' Depiction of the AXA Litigation is Inaccurate. ....................................... 7

        A.      Judge Furman Did Not Order Milliman To Provide Unrestricted Access to MG-
                ALFA. ......................................................................................................... 8
        B.      The Parties Entered Into a Stipulation Granting Limited Access to MG-ALFA, the
                Scope of Which Is Contested. .................................................................... 9
        C.      Milliman Did Not Train Plaintiffs' Experts On How to Manipulate and Alter MG-
                ALFA Models. ........................................................................................... 10

II.     The AXA Litigation is Wholly Irrelevant to This Dispute. .................................... 11

III.    Providing Unrestricted Access to MG-ALFA Is Not Required Under Federal Law ........ 13

IV.     Requiring Milliman to Provide Unrestricted Access to MG-ALFA Would Be Unduly
        Burdensome. .......................................................................................................... 15

CONCLUSION ..................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brach Family Foundation, Inc. v. AXA Equitable Life Insurance Company*,
  Case No. 16-cv-740 (JMF) (S.D.N.Y.)..................................................................................2

*Earp v. Peters*,
  07-cv-31-RLV-DCK, 2009 WL 1444707 (W.D.N.C. May 21, 2009).....................................14

*EFG Bank AG, the Cayman Branch v. Lincoln National Life Ins. Co.*,
  No. 17-cv-02592-GJP (E.D. Pa.) ...........................................................................................6

*Fears v. Wilhelmina Model Agency, Inc.*,
  No. 02-cv-4911, 2004 WL 719185 (S.D.N.Y. Apr. 1, 2004) ................................................15

*Florer v. Johnson-Bales*,
  No. C06-5561, 2010 WL 597170 (W.D. Wash. Feb. 17, 2010)............................................14

*In re Honeywell Intern., Inc. Securities Litigation*,
  230 F.R.D. 293 (S.D.N.Y. 2003) ...........................................................................................14

*In re: Lincoln National COI Litigation*,
  No. 16-cv-06605-GJP (E.D. Pa.) ............................................................................................6

*Snoznik v. Jeld-Wen, Inc.*,
  259 F.R.D. 217 (W.D.N.C. 2009)...........................................................................................14

**Other Authorities**

FRCP 26............................................................................................................................................13

FRCP 45........................................................................................................................................*passim*

## PRELIMINARY STATEMENT

Plaintiffs are asking this Court to order Milliman, Inc. ("Milliman"), a non-party, to provide free, unrestricted access to MG-ALFA—proprietary software that it developed after years of costly research and testing—so that Plaintiffs' experts can use it to perform their own modeling in this case. Plaintiffs make this demand despite the fact that Milliman's proprietary software is not at issue in this dispute. Rather, the litigation centers on the propriety of PHL's cost of insurance ("COI") increase. Plaintiffs claim that unrestricted access to MG-ALFA is necessary because it is the only way that they can test whether PHL's calculations were appropriate and justified, but that is incorrect. Milliman's production will allow Plaintiffs to understand and examine every piece of the model PHL actually used and to create any of their own, separate models in either Microsoft Excel or another commercially available third-party software. In particular, Milliman has offered to (1) provide a full version of MG-ALFA (while limiting Plaintiffs' use of the software to viewing the PHL model including all inputs, outputs, and formulas) and (2) produce the input and output files in Excel format. In other words, Plaintiffs do not actually need unrestricted access to MG-ALFA in order to view and use the relevant information in this case. They just want it so that they can do their own, additional modeling at no charge, using the same software that the defendant paid ██████████████████████ to use. That is not sufficient under FRCP 45, nor is it an appropriate use of subpoena power.

Aware that the relief they seek here is extraordinary, Plaintiffs are unable to cite a single case in support of their argument. Instead, Plaintiffs blatantly miscast the events of an earlier COI case where access to MG-ALFA was requested, implying that the court issued a ruling on the merits requiring that Milliman provide an unrestricted license for MG-ALFA. There, however, the court explicitly stated that a motion to compel was not ripe and instead urged the parties to

work out their dispute on their own.  The parties subsequently negotiated a stipulation and protective order that provided access similar to what Milliman has offered to provide here:  a restricted license to examine PHL's COI models, but no license to otherwise alter the models or run their own, counterfactual calculations.  Such limited access—coupled with Milliman's offer to produce the input and output files in Microsoft Excel format—is more than sufficient to meet Plaintiffs' actual needs.  Accordingly, this Court should deny Plaintiffs' motion to compel.

FACTS

**I.      Background of Milliman and MG-ALFA**

Milliman is one of the word's leading actuarial consulting companies.  Founded in 1947, Milliman is the premier independent provider of actuarial and risk management services to the insurance industry and self-insured organizations worldwide.  Milliman has developed MG-ALFA, a proprietary software that serves as a tool for, among other things, pricing or repricing of insurance products.  *See* Declaration of Timothy Deitz ("Deitz Decl."), ¶ 6.  Milliman's customers can use MG-ALFA to construct actuarial models when they are considering, for example, whether to implement a COI increase.  *Id.*  Customers can use custom inputs, such as their determinations of mortality rates or the extent to which policyholders will continue to make payment, when constructing a model.  *Id.* ¶ 17.

**II.     The *AXA* Litigation**

        A.      <u>The Dispute Before Judge Furman</u>

Milliman previously served as an actuarial consultant to AXA Equitable Insurance Company, another insurance company that was also sued following a COI increase.  In *Brach Family Foundation, Inc. v. AXA Equitable Life Insurance Company*, Case No. 16-cv-740 (JMF) (S.D.N.Y.), the plaintiffs (represented by the same counsel as Plaintiffs here) filed a letter

requesting permission to file a motion to compel Milliman to provide full, unrestricted access to MG-ALFA.[1]  In its response letter, Milliman pointed out that any such motion would be premature because the parties were still exploring ways to provide the plaintiffs with the information they sought without providing access to MG-ALFA.  Declaration of Priya Chadha dated August 30, 2019 ("Chadha Decl."), Ex. 1.  Indeed, the parties were in the midst of determining whether it would be possible to provide the plaintiffs with the information sought in Microsoft Excel format.  At the time the dispute was brought to Judge Furman's attention, Milliman was experiencing technical difficulties in making both the input and output files available in Excel format.  *Id.*

The parties subsequently appeared before Judge Furman who stated that he "agree[d] with AXA that [the dispute] isn't really ripe for me to resolve at this point.  They represent in their letter that discussions are continuing and ongoing, and particularly given the complexity of the issue as a matter of technology, if not law, I think it would be preferable if you guys could work something out, to my having to resolve it for you."  Chadha Decl., Ex. 2, 14:11-17.  Following Judge Furman's instructions to resolve the dispute on their own, the parties negotiated and entered into a stipulation and protective order under which Milliman agreed to provide the AXA plaintiffs with limited access to MG-ALFA to examine the models at issue in that case (the "AXA Stipulation").

Specifically, Section 2 of the AXA Stipulation provided that "Milliman will provide its Proprietary Software, MG-ALFA version 7.6.2000, to Plaintiffs to allow Authorized Users to Use the Proprietary Software to examine particular actuarial files provided to Plaintiffs in discovery in connection with this litigation."  Chadha Decl., Ex. 3, § 2.  The definition of "Use" shows that using the software means running it.  *Id.* at § 1(d).  It does not allow modifying the inputs or

---

[1]	In the *AXA* litigation, Milliman was represented by the same counsel who represented *AXA*: Milbank LLP.  It did not have independent counsel.

formulas of the provided model.  Indeed, neither Section 2 nor Section 1(d)'s definition of "Use" granted the AXA plaintiffs a right to manipulate the input files or formulas in MG-ALFA in order to run their own different models and analyses.

Similarly, while Section 20 granted the AXA plaintiffs the right to "access, view, and use relevant financial modeling files and associated input data *as they were maintained by AXA in the ordinary course of business*," this, too, was meant to allow the AXA plaintiffs to examine AXA's calculations in aggregate or individually, not for plaintiffs to change AXA's inputs or formulas and run their own counterfactual calculations and modeling.  *Id.* § 20 (emphasis added).  To that end, Section 20 specifically provided that Milliman was required to provide assistance if the AXA plaintiffs experienced "difficulties in making Use of the Proprietary Software to *reproduce* AXA's modeling results." *Id.*  Section 20, however, made no mention of a similar obligation if the AXA plaintiffs were attempting to *alter* AXA's modeling results.

B.    Milliman Trains the AXA Plaintiffs on How to View Its Models in MG-ALFA.

Following entry into the AXA Stipulation, Milliman provided one-and-a-half days of training by Timothy Deitz to four experts hired by the AXA plaintiffs.  Mr. Deitz is an experienced actuary who has worked with MG-ALFA for approximately 17 years and regularly trains Milliman's customers on how to use it.  Deitz Decl. ¶¶ 1, 2, 11.  Mr. Deitz conducted the training under the understanding that the AXA plaintiffs' experts could not modify the inputs or the formulas to generate different outputs. *Id.* ¶ 21.  Instead, his goal was to ensure that they could sufficiently understand MG-ALFA so as to be able to identify how the inputs and formulas combined to create the outputs.  *Id.*  He customized his typical presentation accordingly by removing nearly half the slides and therefore did not include many slides that were irrelevant to the experts' needs. *Id.* ¶¶ 14, 16.

4

Mr. Deitz explained how the models and software worked to the experts. *Id.* ¶¶ 17-19. In order to do so, he had to show the experts how the various formulas were set up, how to identify the formulas AXA used, how inputs were coded, how to generate outputs, and how to examine individual pieces of the output calculation in order to validate them. *Id.* Mr. Deitz took care not to show how to alter an input, and he consulted Milliman's attorneys any time he believed an expert asked a question that went beyond the scope of the experts' access under the AXA Stipulation. *Id.* ¶¶ 21, 26, 28, 41, 42. Contrary to Mr. Rouse and Mr. Beiluch's claims, Mr. Deitz did not train them on how to use MG-ALFA to modify the inputs or formulas to perform their own modeling. *Id.* ¶¶ 21, 26, 28, 42.

The experts refer to a supposed "homework" assignment Mr. Deitz assigned, but that was nothing more than an instruction to use MG-ALFA to run the model by using the inputs that AXA had used to generate an output. *Id.* ¶¶ 20, 29, 43. Mr. Deitz made this request of the AXA plaintiffs' experts because the first day was spent discussing how the inputs were coded, and Mr. Deitz wanted to spend the second day of training on how to review the output generated by the model. *Id.* Although generating the output itself took some time, the experts' role was limited to simply hitting the "Run" button, which took a few seconds. *Id.* ¶ 29. The model then ran unattended and was available for the experts and Mr. Deitz to discuss during the second day's training session. *Id.*

C.    Failure To Pay Milliman for Subsequent Conversion Work

After Milliman provided the requested training, the AXA plaintiffs' experts reached out for assistance in converting a model created in an earlier version of the MG-ALFA software so that it would run on a later version. Deitz Decl. ¶ 23. Milliman performed the requested

conversion. *Id.* But the AXA plaintiffs' experts and counsel subsequently refused to pay for that work, forcing Milliman to seek compensation from AXA, the defendant in that case, instead. *Id.*

## III.     Subsequent COI Litigation

In subsequent COI litigation in other districts,[2] Milliman entered into license agreements with plaintiffs that similarly granted a limited license to MG-ALFA in order to permit review of the files within MG-ALFA, but did not allow any manipulation of the files themselves. Specifically, Section 2 of the license agreements contained a nearly identical grant to the one provided in the AXA Stipulation, stating that "Milliman will provide the Proprietary Software to User to allow Users to use the Proprietary Software to examine particular actuarial files provided to Firm in discovery in connection with the Dispute." Chadha Decl., Ex. 4. The license agreements further provided that the license was "solely to examine particular actuarial files" and that users did not have the right to "modify or create any derivative work from the Proprietary Software." *Id.*

## IV.     This Litigation

Here, Milliman has attempted to enter into a similar license agreement with Plaintiffs. The only difference between the license Milliman has proposed here is that it more clearly states that the license provided is "solely to *view* particular actuarial files," rather than a right to "examine" actuarial files. In Milliman's eyes, however, this does not make a meaningful difference in the nature of the rights provided under the license agreement. Rather, in both instances, the license grants a restricted right to allow authorized users the ability to view the models at issue within

---

[2]      *In re: Lincoln National COI Litigation*, No. 16-cv-06605-GJP (E.D. Pa.); *EFG Bank AG, the Cayman Branch v. Lincoln National Life Ins. Co.*, No. 17-cv-02592-GJP (E.D. Pa.).

MG-ALFA itself.[3]  Milliman only altered the license's language in an attempt to provide additional clarity regarding the scope of rights granted under the license following disputes regarding the license's terms and the meaning of the term "examine" in other COI cases.  Chadha Decl., Ex. 5.

Critically, Milliman also offered to produce the requested information in Microsoft Excel format.  Chadha Decl., Ex. 6.  Unlike in *AXA*, Milliman is now capable of producing both the input and output files in Excel, thereby providing plaintiffs all of the information they would need to create and run their own counterfactual models, by altering the inputs used by PHL, if desired. Plaintiffs' experts can perform this modeling work in either Microsoft Excel or in another commercially available third-party product.  Deitz Decl. ¶ 6.

## ARGUMENT

### I.    Plaintiffs' Depiction of the AXA Litigation is Inaccurate.

As addressed in further detail below, Plaintiffs misrepresent and overstate the events of the *AXA* case in an attempt to bolster their arguments, and this Court should disregard their claims entirely.  Contrary to Plaintiffs' assertions, Judge Furman did not address this issue on the merits, Milliman did not enter into a stipulation that allowed the AXA plaintiffs "to use MG-ALFA to review the MG-ALFA native files *and* use MG-ALFA to run their own projections using different assumptions and scenarios," and Milliman did not provide training on "how to edit and modify MG-ALFA files to use different inputs and formulae for alternative scenarios."   Plaintiffs'

---

[3]    Plaintiffs repeatedly claim that Milliman has only offered to produce a "crippled version" of MG-ALFA, but this is false.  Milliman has offered to produce the exact same version of MG-ALFA that was used to model PHL's COI increase.  The proposed license limits Plaintiffs' use to viewing each of the files, including the input, output, and formulas.  The access offered will allow Plaintiffs to see how each input affected each output.  The license will prohibit them from changing the chosen inputs to create their own, counterfactual models.

Memorandum of Points and Authorities in Support of Motion to Compel Milliman, Inc. to Produce
Actuarial Software and Models ("Plaintiffs' Br."), p. 4.

A.     Judge Furman Did Not Order Milliman To Provide Unrestricted Access to MG-
       ALFA.

Judge Furman did not issue a ruling on the merits regarding whether Milliman could be
compelled to provide access to its proprietary software.  Rather, he rejected the *AXA* Plaintiffs'
request to compel Milliman to provide access to MG-ALFA and instead explicitly stated that he
agreed with Milliman that intervention would be premature at that juncture.  Specifically, he stated
that he "agree[d] with AXA [and Milliman] that it isn't really ripe for me to resolve at this point"
and instead urged the parties to "work something out."  Chadha Decl., Ex. 2, 14:11-12, 16.

Plaintiffs cite to Judge Furman's statement that "plaintiffs need to be given access to the
relevant data in a way that meaningfully enables them to use it," but there is no evidence in the
record that Judge Furman was addressing the AXA Plaintiffs' supposed need for unrestricted
access to MG-ALFA to perform their own modeling, independent of the data and model actually
at issue in that case.  In fact, at the time the dispute was brought before Judge Furman, Milliman
had not yet agreed to provide *any* access to MG-ALFA.[4]  Accordingly, Judge Furman's statement
was simply a response to the reality that the data were in a proprietary format that—at least as of
the date of the letter—could not be viewed without running MG-ALFA.  In any event, because
Judge Furman did not actually rule on the merits of the dispute, parsing his statement is ultimately

---

[4]     *Compare* Chadha Decl., Ex. 7, pp. 1-2 (AXA Plaintiffs recounting AXA and Milliman's efforts to
provide access to requested information and data without also providing access to MG-ALFA); Chadha
Decl., Ex. 1, p. 2 (AXA and Milliman's letter explaining that"[p]ursuant to the terms of the license
agreement, AXA was required to and did seek Milliman's consent for Plaintiff to use the MG-ALFA
software to view the files in question.  Milliman did not consent because of the proprietary nature of MG-
ALFA.  Milliman and AXA have been diligently exploring how to satisfy Plaintiff's request for the readable
input files without providing Brach with Milliman's proprietary software. . . . AXA and Milliman continue
to explore a means of producing the actuarial input files in a reasonably usable form that does not require
the use of MG-ALFA.")

irrelevant here, where the facts are different and the issue is actually presented to the Court for resolution.

      B.      <u>The Parties Entered Into a Stipulation Granting Limited Access to MG-ALFA, the Scope of Which Is Contested.</u>

Following the March 9, 2018 conference before Judge Furman, the parties entered into the AXA Stipulation on March 19.  Pursuant to the AXA Stipulation, Milliman provided the AXA Plaintiffs the version of MG-ALFA that AXA used when analyzing whether to implement a COI increase, but Milliman restricted the scope of the AXA Plaintiffs' license such that they should only examine AXA's models.  Though the AXA Stipulation granted users the right to "examine particular actuarial files," Milliman did not intend to grant users the right to manipulate AXA's inputs or formulas such that they could run their own models.  The parties now dispute the scope of the rights granted under the AXA Stipulation, but Milliman's position is that the AXA Plaintiffs were only allowed to review the files, not manipulate them and run their own models.  As noted above in Section II.A, the AXA Stipulation allowed users "to *examine* particular actuarial files provided to Plaintiffs in discovery in connection with this litigation."  Chadha Decl., Ex. 3, § 2.  Similarly, Section 1(d)'s definition of "Use" made no mention of a right to manipulate the input files in MG-ALFA in order to run their own analyses.  *Id.* § 1(d).  Plaintiffs' citation to Section 20, which granted users the right to "access, view, and use" files, is also unavailing.  Like Section 2, this only grants users the right to review and analyze the model, not to alter it in any way.

Indeed, Milliman believes that Plaintiffs' use of MG-ALFA to do their own modeling rather than solely to review Defendants' models is a misuse of subpoena power.  Customers pay at least ███████████████████████ to use MG-ALFA to conduct their modeling.  For example, ███████████████████████████████████████████████ ████████████████████████████.  Deitz Decl. ¶ 50.  Plaintiffs should not be permitted to

abuse the subpoena process to obtain the same software for free, particularly where, as discussed in further detail below, it is entirely unnecessary given the alternative options available to Plaintiffs.

      C.    <u>Milliman Did Not Train Plaintiffs' Experts On How to Manipulate and Alter MG-ALFA Models.</u>

Mr. Deitz provided limited training to the AXA plaintiffs' experts to ensure that the experts would understand how AXA's COI calculations worked. Deitz Decl. ¶¶ 14, 17-19, 21, 27-28, 30-31. Without such training, the software could be impenetrably dense and of little use to plaintiffs' experts. *Id.* The purpose of the training, however, was only to provide the necessary context, not to train experts on how to manipulate the software to perform their own modeling. *Id.* ¶ 21.

To explain how MG-ALFA worked and how the specific AXA model operated, Mr. Deitz had to explain how inputs were coded. *Id.* ¶¶ 17, 21. There was no way for Mr. Deitz to provide that information without inadvertently providing enough information for the experts to also determine how to alter an input. *Id.* ¶ 21. Mr. Deitz never intended to train the AXA plaintiffs' experts on how to do so. *Id.* ¶¶ 21, 26, 28, 41, 42. In fact, he routinely consulted legal counsel anytime he believed that an expert's question went beyond the scope of the AXA Stipulation. *Id.* ¶ 22.

The "homework" assignment to which the Plaintiffs refer was simply an instruction to run the AXA model in order to generate an output that the parties could examine the next day after focusing on inputs for the first day of training. *Id.* ¶¶ 20, 29, 43. While the model itself took several hours to run, the only action the experts had to take was to press the "Run" button, which took a matter of seconds. *Id.* ¶ 29. Mr. Deitz simply asked the experts to run the model overnight so that they could examine the output together during the next day's training rather than having to wait for the model to run at that time. *Id.* ¶¶ 20, 29, 43. Plaintiffs' suggestion that this "homework"

was designed to allow them to conduct their own modeling is yet another misrepresentation.  The model that was run was the exact same model that AXA used.  *Id.* ¶¶ 17-22, 27.  In other words, the model employed the inputs that AXA used, and once run, resulted in the same outputs.  *Id.* Because no inputs were altered, running the model did not violate the AXA Stipulation nor would it violate the license agreement Milliman has proposed here.

## II.    The AXA Litigation is Wholly Irrelevant to This Dispute.

Even if Plaintiffs had accurately depicted the AXA Litigation, the circumstances surrounding that dispute are easily distinguishable from the case at hand because Milliman has offered to produce both the input and output files in Excel format.  Chadha Decl., Ex. 6, p. 3.  In *AXA*, by contrast, Milliman was unable to offer to produce both its input and output files in Excel format due to technological difficulties it experienced.  Chadha Decl., Ex. 1, p. 2.  Because plaintiffs here would have access to both the input and output files in Excel format, they would be fully capable of altering the inputs to run their own models, either in Microsoft Excel or some other commercially available third-party software, to the extent that doing so is necessary.

Plaintiffs' belabored discussion of the format in which MG-ALFA files are stored is, at best, an irrelevant smokescreen intended to confuse the court.  *See* Plaintiffs' Br., pp. 3-4; Bieluch Decl. ¶¶ 7, 9; Rouse Decl. ¶¶ 7, 9, 23.  Milliman does not contest that the data underlying the model (*i.e.*, the inputs, formulas, and outputs) are relevant to this case.  That is precisely why it has offered to both provide a limited license for MG-ALFA *and* to produce the input and output files in Excel format.  Doing so will provide Plaintiffs with access to the discoverable information in a usable format.  What Milliman has consistently disputed, however, both here and in the prior COI cases, is the need for MG-ALFA for Plaintiffs to perform their own counterfactual modeling.  While Milliman concedes that the underlying data is relevant to this dispute, there is no reason

why Plaintiffs' experts need MG-ALFA to perform the separate modeling they wish to conduct in support of their theory of the case. Deitz Decl. ¶¶ 6, 19, 32-38, 40-41. Plaintiffs clearly wish to use MG-ALFA for free to perform their own modeling, but Rule 45 does not permit them to subpoena a preferred software package. They are entitled to the data in a usable form and the information necessary to understand and to confirm the calculations that were performed.

Further, Plaintiffs claim that using Excel or an alternative software is not a viable option because they may not be as fast as MG-ALFA or could risk the introduction of errors into Plaintiffs' modeling, but they provide no evidence for either claim. While MG-ALFA is a powerful tool, Plaintiffs' claim that it "would take a team of software engineers thousands of hours" to "recreate MG-ALFA's functionality in Excel" is laughable. Rouse Decl. ¶ 27; *see also* Plaintffs Br., pp. 14-15. As Mr. Deitz explained in his declaration, any experienced actuary is capable of replicating the calculations performed by MG-ALFA in either Excel or a commercially available third-party software. Deitz Decl. ¶ 38. Indeed, constructing models to perform complicated analyses is precisely what experts across the country are hired to do in countless litigations everyday. *Id.* ¶¶ 6-9, 19, 32-37, 40-41. Plaintiffs' professed indignation that their experts may have to do so here should be disregarded. Plaintiffs' position is equivalent to a damages expert demanding production not only of financial data from the defendant, but also production of the defendant's accounting and financial software, at no cost and with no restrictions. It certainly would be easier for plaintiffs' experts if they could use Rule 45 to obtain any business modeling software package they wished to assist them in creating their models. But as shown below, *see infra* pp. 13-15, Rule 45 does not permit a party to demand modeling software from a non-party. At minimum, Milliman believes that Plaintiffs' experts must show that it is not practically possible to examine the data at issue, and reproduce the calculations at issue, without

unrestricted access to MG-ALFA.  Absent that showing, Rule 45 does not justify the relief they seek.

Indeed, Plaintiffs implicitly admit the weakness of their position when they falsely argue that lack of unrestricted access "would prevent Plaintiffs from performing their own projections or testing the impact or propriety of the assumptions used in Milliman's modeling."  Plaintiffs' Br., p. 13.  Plaintiffs know that assertion is incorrect.  To the extent that Plaintiffs desire to perform their own projections or test PHL's modeling (*i.e.* the application of formulas used in the model to particular inputs to obtain and understand the outputs), they would be perfectly capable of doing so *outside* of MG-ALFA via either Excel or a commercially available third-party software.  In addition, because MG-ALFA is willing to provide a view-only license to MG-ALFA along with the Excel files for both the inputs and outputs, Plaintiffs would easily be able to view each individual input used in the model, the formulas used for these inputs, and the results of the model once it was run (*i.e.*, the outputs).  In other words, every aspect of PHL's model would be available for Plaintiffs to scrutinize even without unrestricted access to MG-ALFA.  Plaintiffs' hyperbole that Milliman's solution somehow allows it to "conceal from Plaintiffs how profits were calculated and modeled" is baseless.  Plaintiffs' Br., p. 13.

## III.   Providing Unrestricted Access to MG-ALFA Is Not Required Under Federal Law.

In a breezy paragraph unburdened by a citation to a single case, Plaintiffs claim that Milliman cannot meet its obligations under either FRCP 26 or 34 without providing full, unrestricted license to its proprietary software.  Plaintiffs' Br., pp. 11-12.  But what federal law actually requires is that Plaintiffs show "a substantial need for the testimony or material that cannot be otherwise met without undue hardship."  FRCP 45(d)(3)(C)(ii).  It is perhaps not surprising that Plaintiffs cannot find even one case to support what is, at bottom, its absurd request here:  that a

non-party be required to provide a free license to expensive, proprietary software, as well as training regarding how to use that software, despite the fact (1) that the software itself is not at issue and (2) that the movant has utterly failed to demonstrate an actual need for the software other than stating that its paid experts enjoy using Milliman's product for free, as they sell their services, and would like to continue to do so.

Courts have regularly declined to require access in similar cases.  In *In re Honeywell Intern., Inc. Securities Litigation*, the plaintiff served non-party PricewaterhouseCoopers, which had served as the defendant's auditor, with a subpoena seeking its audit workpapers.  230 F.R.D. 293, 297 (S.D.N.Y. 2003).  PricewaterhouseCoopers produced the requested documents in hard copy, but the plaintiff requested production in electronic form.  PricewaterhouseCoopers objected that this would force them to provide access to its proprietary software.  Rather than requiring PricewaterhouseCoopers to turn over access to its proprietary software, this court gave it the option of producing "its workpapers on CD-ROMs that could be viewed using commercially-available software." *Id.*

Courts in other districts have echoed this approach, making clear that federal law does not require the production of proprietary software in order to aid the requesting party to manipulate and otherwise alter the materials. S*ee, e.g.*, *Snoznik v. Jeld-Wen, Inc.*, 259 F.R.D. 217, 223-24 (W.D.N.C. 2009) (denying request for proprietary Excel templates where templates did "not have any relevance to the actual issues in this trial," templates only "[sped] up production, but [did] not change the calculations," and defendant failed to establish "any real need" for them); *Earp v. Peters*, 07-cv-31-RLV-DCK, 2009 WL 1444707, at *2-*3 (W.D.N.C. May 21, 2009) (denying request to compel production of software where party had already turned over underlying data); *Florer v. Johnson-Bales*, No. C06-5561 RJB/KLS, 2010 WL 597170, at *4 (W.D. Wash. Feb. 17,

2010) ("Plaintiff's request for the software program is not relevant to his claims in this case as the software itself not tend to make any fact more or less likely true, *i.e.*, the nutritional value of the menus themselves.")   Indeed, if Plaintiffs' argument was adopted, any company that markets sophisticated software would be required to provide it, at no charge, to assist plaintiffs' experts in performing their own modeling.   That would be true in intellectual property cases involving reasonable royalties.   It would also be true in engineering cases involving allegedly defective design of products.   That is not what Rule 45 requires.   Plaintiffs' declarants say that they are experts in actuarial modeling.   Rouse Decl. ¶ 3; Bieluch Decl. ¶¶ 3-4.   They are paid handsomely to develop and analyze models.   The fact that they would like to use Milliman's MG-ALFA software to construct alternative actuarial models does not entitle them to use a Rule 45 subpoena to obtain that software, as numerous courts have held.

**IV.      Requiring Milliman to Provide Unrestricted Access to MG-ALFA Would Be Unduly Burdensome.**

Requiring Milliman to provide unrestricted access to MG-ALFA would run afoul of FRCP 45(d)(3)(A)(iv), which provides that subpoenas cannot subject a non-party to an undue burden. Instead, courts "should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." *Fears v. Wilhelmina Model Agency, Inc.*, No. 02-cv-4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).

Here, Milliman is subject to great burden in multiple ways.   First, requiring Milliman to provide unrestricted, free access to MG-ALFA would cause commercial harm to Milliman's business interests and result in the loss of decades of goodwill among its customer base.   Contrary to Plaintiffs' claims, this is not because Milliman "wishes to market its services as a way for insurance companies to raise COI rates while shielding that analysis from discovery."   Plaintiffs' Br., p. 17.   As addressed in Section II *supra*, by providing a restricted license to view the model in

MG-ALFA as well as producing the input and output files in Excel format, Milliman would have no way whatsoever to "shield" its analysis even if it wanted to. The data and formulas Milliman's customers use remains fully discoverable.

But requiring Milliman also to provide free modeling software to plaintiffs would harm Milliman's business. Milliman's customers will understandably be frustrated having paid ███ ████████████████ to access a product that Plaintiffs and their experts are able to use free of charge in discovery. Deitz Decl. ¶ 50. Moreover, as a policy matter, Milliman generally does not license its MG-ALFA software to consultants. This is because consultants cannot help but reveal competitively sensitive features of MG-ALFA because there is no way for them to unlearn what they have learned via use of the software. *Id.* ¶ 51. Further, consultants who have been allowed to use MG-ALFA in the past have often done so improperly, thereby hurting Milliman's reputation and credibility because MG-ALFA is blamed for the consultants' poorly constructed models. *Id.*

Second, if the Court grants Plaintiffs' motion and requires Milliman to provide an unrestricted license to use MG-ALFA, Milliman may have to provide additional training and services to Plaintiffs' experts to address the expanded access they would have. Milliman is especially concerned about providing such services because these experts have previously requested services for which Milliman was not paid. Deitz Decl. ¶ 23. Even if additional training and services would be unnecessary here because these particular experts have already received limited training and have apparently figured out how to use MG-ALFA to do their own modeling, the court's ruling here would likely serve as a precedent in other COI cases where access to MG-ALFA is at issue, and Milliman would have to train plaintiffs' experts in those cases as well.

These burdens dwarf any burden Plaintiffs claim they may face by having to use Excel or a commercially available third-party software to perform the straightforward work for which they

claim expertise.[5]   The Court should not adopt a rule that will lead future plaintiffs to seek production of accounting software, engineering software, and modeling software from third parties.  Rule 45 is designed to allow parties to obtain information they need.  Milliman's proposed license provides Plaintiffs with the facts they need—the inputs, outputs, and formulas used to create the disputed COI model.  Plaintiffs evidently intend to argue, in this case, that COI should have been modeled in some other way.  Rule 45 does not entitle their experts to use Milliman's software to support their counterfactual argument.

Finally, to the extent that Plaintiffs argue that it is somehow unfair to allow PHL to continue to use MG-ALFA while they cannot also do so, this Court should disregard that argument entirely. PHL can use MG-ALFA because it has paid significant sums to license that software, ███████ ███████████████████████████.  Deitz Decl. ¶ 50.  Plaintiffs, on the other hand, are seeking the software for free, but that would be unfair to both Milliman and PHL.

---

[5]      Plaintiffs' argument regarding the amount in controversy is irrelevant here given that Milliman is a non-party.  Plaintiffs' Br., p. 11.  Indeed, in the Special Master Opinion Plaintiffs cite from the *In re: Lincoln COI Litigation*, the court rejected an undue burden argument made by the *defendants*, not by a non-party.

## CONCLUSION

Milliman respectfully requests that the Court deny Plaintiffs' motion to compel Milliman to provide access to its proprietary MG-ALFA software.

Dated: New York, New York
       August 30, 2019

By: /s/ Joanna A. Diakos
    Joanna A. Diakos
    Priya Chadha
    K&L Gates LLP
    599 Lexington Avenue
    New York, New York 10022
    Telephone: (212) 536-4807
    joanna.diakos@klgates.com
    priya.chadha@klgates.com

    Theodore J. Angelis, *pro hac vice pending*
    K&L Gates LLP
    925 Fourth Avenue, Suite 2900
    Seattle, WA 98104
    Telephone: (206) 623-7580


    *Attorneys for Non-Party Milliman, Inc.*