# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHT HOLDING I LLC, and JAMES KENNEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PHL VARIABLE INSURANCE COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:18-cv-03444 (MKV) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD</u>

<u>[Redacted Version of Document Sought to Be Filed under Seal]</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND ...............................................................................................6

    A.    Class Counsel Investigated the COI Increase and Promptly Filed Detailed Complaints. ...................................................................................6

    B.    Class Counsel Defeated PHL's Motion to Dismiss. ..................................7

    C.    The Court Appointed SG as Interim Class Counsel. .................................7

    D.    Class Counsel Engaged in Extensive Fact and Expert Discovery. ...........8

    E.    Class Counsel Fully Briefed Class Certification and Partially Briefed Summary Judgment and Daubert Motions. ..........................................10

    F.    The Class's Damages in This Action Stopped Accruing in 2021 ...........10

    G.    Class Counsel Negotiates an "Excellent" Settlement. ...........................11

III.  ARGUMENT ...................................................................................................12

    A.    Class Counsel's Fee Request Is Reasonable. ..........................................12

        1.    Class Counsel Is Entitled to Fees from the Common Fund. ......................12

        2.    The Requested Fee Is Reasonable under the Preferred Percentage Method. ...................................................................................13

            a.    The Percentage Approach Is Favored ...........................................13

            b.    A Fee of 13.8% of Settlement Benefits Is Reasonable .................14

        3.    A Lodestar "Crosscheck" Confirms Class Counsel's Request Is Reasonable. ...........................................................................16

        4.    The Goldberger Factors Support Class Counsel's Fee Request. ..............18

            a.    Labor Expended by Counsel (Goldberger Factor 1) .....................19

            b.    Magnitude and Complexity of the Litigation (Goldberger Factor 2) ...........................................................................19

            c.    The Risk of the Litigation (Goldberger Factor 3) .........................19

            d.    The Quality of the Representation (Goldberger Factor 4) .............21

e.     Requested Fee in Relation to the Settlement (Goldberger Factor 5) .......................................................................................22

f.     Public Policy Considerations (Goldberger Factor 6) ....................22

5.     The Reaction of the Class Supports the Requested Fee ............................22

B.     Class Counsel's Reasonable and Necessary Expenses Should Be Reimbursed. ...........................................................................................................23

C.     A Service Award for James Kenney Is Appropriate ..............................................24

IV.     CONCLUSION ...............................................................................................................24

**Cases**

*37 Besen Parkway, LLC v. John Hancock Life Insurance Co.* (*Hancock COI I*),
No. 15-cv-9924, (S.D.N.Y. Mar. 18, 2019) ................................................................14, 17, 18

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-CV-7126, 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)..........................................24

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09-CV-118m, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ............................................24

*Beckman v. KeyBank N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................................17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................................................12

*City of Providence v. Aeropostale, Inc., No. 11 CIV. 7132 CM GWG*, 2014 WL
1883494 (S.D.N.Y. May 9, 2014)*, aff'd sub nom. Arbuthnot v. Pierson, 607 F.
App'x 73* (2d Cir. 2015)......................................................................................................21

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................22

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) ...............................................................................................17

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................................... *passim*

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)................................................................................................18

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................................................... *passim*

*In re Abbott Labs. Sec. Litig.*,
No. 92-C-3869, 1995 WL 792083 (N.D. Ill. July 3, 1995) ...................................................21

*In re Apollo Group Inc. Sec. Litig.*,
No. CV 04-2147, 2012 WL 1378677 (D. Ariz., Apr. 20, 2012)............................................16

*In re Bisys Sec. Litig.*,
No. 04 Civ. 3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ...........................................22

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13md2016, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ..............................................17

*In re CRT Antitrust Litig.*,
  No. C-07-5944, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016)...................................................16

*In re Domestic Drywall Antitrust Litig.*,
  2018 WL 3439454 (E.D. Pa. July 17, 2018)...........................................................................21

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)....................................................................................13

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020) ...................................................................16, 23

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................................15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 Civ. 5450, 2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ..........................................23

*In re Lloyd's Am. Tr. Fund Litig.*,
  No. 96 Civ.1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .........................................16

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ...........................................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ....................................................................................13

*In re Pfizer Inc. Sec. Litig.*,
  No. 04-cv-09866, Dkt. No. 727 (S.D.N.Y. Dec. 21, 2016) ....................................................16

*In re Solodyn Antitrust Litig.*,
  No. 14-md-2503, Dkt. 1180 (D. Mass. July 18, 2018) ...........................................................16

*In re Telik*,
  576 F. Supp. 2d at 592 (S.D.N.Y. 2008).................................................................................19

*In re U.S. Foodservice, Inc. Pricing Litig.*,
  No. 3:07-md-1894, 2014 WL 12862264 (D. Conn. Dec. 9, 2014).........................................16

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................................20

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................................22

*Kenney v. PHL Variable Ins. Co.*,
　　No. 3:22-cv-00552-OAW (D. Conn.) .............................................................10, 11

*LeBlanc-Sternberg v. Fletcher*,
　　143 F.3d 748 (2d Cir. 1998)...............................................................................18

*Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*,
　　392 F. Supp. 3d 361 (S.D.N.Y. 2019) ................................................................22

*Maley v. Del Glob. Techs. Corp.*,
　　186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................2, 22

*McCoy v. Health Net, Inc.*,
　　569 F. Supp. 2d 448 (D.N.J. 2008) ....................................................................15

*McDaniel v. County of Schenectady*,
　　595 F.3d 411 (2d Cir. 2010)...............................................................................16

*Meek v. Kan. City Life Ins. Co.*,
　　No. 19-00472-cv (W.D. Mo.) .................................................................3, 5, 6, 20

*Missouri v. Jenkins*,
　　491 U.S. 274 (1989)...........................................................................................18

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
　　No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ......................1, 15

*Morris v. Affinity Health Plan, Inc.*,
　　859 F. Supp. 2d 611 (S.D.N.Y. 2012)..................................................................16

*Norem v. Lincoln Ben. Life. Co.*,
　　737 F. 3d 1145 (7th Cir. 2013) ..........................................................................20

*Osberg v. Foot Locker, Inc.*,
　　No. 07-cv-1358, Dkt. 423 (S.D.N.Y. June 8, 2018) ............................................17

*Pantelyat v. Bank of Am., N.A.*,
　　No. 16-cv-8964, 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ..........................13, 17

*Pearlstein v. BlackBerry Ltd.*,
　　No. 13 Civ. 7060, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) .........15, 18, 23, 24

*Rogowski v. State Farm Life Ins. Co.*,
　　No. 4:22-cv-00203, 2023 WL 5125113 (W.D. Mo. Apr. 18, 2023)...................1, 17

*Sheppard v. Consol. Edison Co. of N.Y.*,
　　No. 94-CV-0403, 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002).............................15

*Simerlein v. Toyota Motor Corp.*,
   No. 3:17-cv-1091, 2019 WL 2417404 (D. Conn. June 10, 2019) ..........................................15

*Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*,
   853 F. App'x 451 (11th Cir. 2021) ........................................................................................20

*State of W. Va. v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ..........................6, 20

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   No. 12cv4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ..........................................17, 21

*Sykes v. Harris*,
   No. 09 Civ. 8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016)..........................................15

*Taylor v. Midland Nat'l Life Ins.*,
   No. 4:16-CV-00140, 2019 WL 7500238 (S.D. Iowa May 3, 2019) ......................................20

*Tussey v. ABB, Inc.*,
   No. 06-CV-04305, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ......................................15

*Velez v. Novartis Pharms. Corp.*,
   No. 04-CV-9194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010)...............................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..............................................................................................13, 19

**Other Authorities**

Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, Managing
   Class Action Litigation: A Pocket Guide for Judges 35 (3d ed. 2010)....................................14

T. Eisenberg, G. Miller & R. Germano, Attorneys' Fees in Class Actions: 2009–
   2013, 92 N.Y.U. L. Rev. 937 (2017) .....................................................................................16

## TABLE OF DEFINED TERMS

| Abbreviation | Definition |
| --- | --- |
| 2017 COI Increase | PHL's COI increase on certain PAUL and PEL policies, which PHL announced in August 2017 |
| 2021 COI Increase | PHL's COI increase on certain PAUL and PEL policies, which PHL announced in November 2020 |
| Advance Trust | Advance Trust & Life Escrow Services, LTA, securities intermediary and nominee of Life Partners Position Holder Trust |
| APL | One of the oldest computer programming languages, developed in the 1960s |
| CID | Connecticut Insurance Department |
| Class | The "Settlement Class" referenced in the Court's August 9, 2023 Order Approving Preliminary Class Action Settlement and Certifying Class, Dkt. 271. |
| Class Policies | The policies on which PHL imposed the 2017 COI Increase |
| COI | Cost of insurance |
| Connecticut Action | *Kenney v. PHL Variable Ins. Co.*, No. 3:22-cv-00552-OAW (D. Conn.), in which Plaintiff challenges PHL's 2021 COI Increase |
| KPMG | KPMG International Ltd., PHL's financial auditing firm |
| Milliman | Milliman, Inc., which served as PHL's actuarial consulting firm |
| PAUL | Phoenix Accumulator Universal Life |
| PEL | Phoenix Estate Legacy |
| PHL | PHL Variable Insurance Company |
| SG or Class Counsel | Susman Godfrey L.L.P. |
| STOLI | Stranger-owned life insurance |

# I.     INTRODUCTION

Class Counsel SG has vigorously litigated this case for five-and-a-half years. During that time, SG prevailed on a motion to dismiss and multiple discovery disputes that unearthed key evidence, took and defended 25 highly technical depositions, worked with experts to submit detailed expert reports on liability and damages, and briefed class certification, summary judgment, and *Daubert* motions. After all that, SG, with the assistance of a respected mediator, settled this highly complex case for $44.7 million in settlement benefits. Those benefits include $18.5 million of non-reversionary cash payments to Class members, which by themselves equal ***62.8% of all damages that could have been awarded at trial***. The settlement also includes non-cash benefits valued at $26.2 million by a highly experienced expert. These non-cash benefits could not have been achieved at trial, even with a full trial victory.

Given this exceptional recovery, Class Counsel respectfully applies for an award of attorneys' fees of $6,166,667, which is 13.8% of the settlement benefits (or using a less-accepted and more conservative methodology, one-third of the cash component of the settlement in isolation). This one-third-of-cash-fund figure is consistent with the range approved in other similar COI cases. *See, e.g., Rogowski v. State Farm Life Ins. Co.*, No. 4:22-cv-00203, 2023 WL 5125113, at *5 (W.D. Mo. Apr. 18, 2023) (*State Farm COI*) (approving fee award of one-third of $325 million cash fund); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *10–11, *13, *24 (S.D.N.Y. Sept. 9, 2015) (*Phoenix COI*) (approving fee award of one-third of the $40.5 million cash portion of the settlement). It is also well within the range approved by the Second Circuit. *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."). And it is below the

contingency percentages that Class Counsel negotiates with private litigants in non-class action cases where SG advances expenses. Ard Decl. ¶¶ 44–45. In those cases, SG's fee recoveries start at 40% of the gross sum recovered. Ard Decl. ¶ 44. Further, although a lodestar cross-check is not required in the Second Circuit, the lodestar multiplier here is only 1.02—far below the low end of the multiplier range that is regularly awarded in this Circuit. *See, e.g., Phoenix COI*, 2015 WL 10847814, at *18 (noting that courts in this Circuit "regularly award lodestar multipliers from 2 to 6 times lodestar," and approving a 4.87 multiplier (citation omitted)).

This Settlement is outstanding by any measure, including when considering the "critical element" courts consider in awarding fees: the result obtained. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) (citation omitted). In an earlier case challenging a COI increase imposed by PHL and its New York affiliate, the parties settled after a class was certified for a cash fund that, after fees, represented 68.5% of the overcharges—an outcome Judge McMahon called "one of the most remunerative settlements this court has ever been asked to approve." *Phoenix COI*, 2015 WL 10847814, at *10–11. There, Judge McMahon approved a fee award equal to one-third of the cash portion of the settlement, the same percentage Class Counsel seeks here. *Id.* at *13, *24. Another substantial benefit of the instant settlement is that payment will be sent directly to Class Members, without any need to fill out claim forms, and with no reversion to PHL. The average cash payment per policy is approximately $2,266 if all amounts requested herein are approved. Ard Decl. ¶ 29.

This settlement is especially impressive considering the limited scope of the release, and the timing and structure of the 2017 COI Increase at issue. Here, approximately three years after implementing the 2017 COI Increase, PHL implemented a new 2021 COI Increase. Ard Decl. ¶ 42. The validity of that new increase is not at issue in this case and claims with respect to it are

expressly preserved and carved out from the Settlement. But the substitution of the 2017 COI Increase with the 2021 COI Increase fixed the amount of overcharges at issue through trial at $29,435,208. Dkt. 265 ¶ 3. Accordingly, this settlement for 62.8% of all damages that possibly could be recovered at trial is a highly successful settlement.

On top of the cash benefits, Class Counsel also secured substantial prospective relief for class members, which would not have been achievable even had the Class prevailed at trial. In *Phoenix COI*, the court adopted expert analysis valuing the non-monetary relief and included that amount in the "gross settlement value." *See* 2015 WL 10847814, at *15 ("In calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of both the monetary and non-monetary benefits conferred on the Class."). Here, similar expert analysis shows that the non-monetary relief in this case is worth $26.2 million. Rouse Decl. ¶ 7. That non-monetary relief includes a guarantee by PHL not to impose a new, more expensive COI rate scale for two years. That is a valuable guarantee, considering (i) PHL's pattern of repeated COI Increases and (ii) the worldwide pandemic that some insurance companies claim caused their costs to skyrocket and may lead to COI increases.[1] Rouse Decl. ¶¶ 43–51.

These results were attainable only because of Class Counsel's vigorous prosecution of this case and its deep experience in complex class actions, including COI class actions. Class Counsel filed this case within months of the COI increase taking effect. In *Phoenix COI*, the class benefited from findings by multiple regulators that PHL's COI increase was improper. Here, by contrast, Class Counsel did not have the luxury of piggybacking on any government investigation. In fact, PHL disclosed its 2017 COI Increase to the Connecticut Insurance Department ("CID"), which

---

[1] PHL's former expert, Timothy Pfeifer, has argued elsewhere that COVID has led to deterioration in mortality expectations. *E.g.*, *Meek v. Kan. City Life Ins. Co.*, No. 19-00472-cv (W.D. Mo.), Dkt. 90-2 (Pfeifer Decl.) ¶ 54 (filed Oct. 12, 2021).

did not object to it. Dkt. 276-25 ¶ 71. And because PHL disclosed virtually no information to policyholders about the 2017 COI Increase, Class Counsel had to investigate its impact and purported actuarial justifications independently.

After defeating a motion to dismiss, Class Counsel and their experts immediately went to work obtaining and analyzing tens of thousands of PHL's and third parties' documents. A key discovery fight quickly emerged: PHL's actuarial consultant, Milliman, which modeled the 2017 COI Increase for PHL, refused to produce the MG-ALFA software necessary to use and analyze the actuarial models. After lengthy meet-and-confer negotiations failed, Plaintiffs moved to compel Milliman to provide Plaintiffs access to its MG-ALFA software. Dkt. 106. To support the motion to compel, Class Counsel submitted two expert declarations and multiple exhibits explaining the importance of the MG-ALFA software and models. Dkts. 108–10. In response, Milliman claimed that its MG-ALFA software was too confidential, expensive, and commercially sensitive to provide to Plaintiffs. Dkt. 118. After full briefing, the Court sided with Plaintiffs, ordering Milliman to provide full access to its MG-ALFA software. Dkt. 138.

That victory proved critical, as those MG-ALFA models formed the foundation of many of the expert opinions of Plaintiffs' actuarial expert, Howard Zail. Dkts. 204-2, 204-24. For example, Mr. Zail relied on MG-ALFA to find that PHL's 2017 COI Increase unlawfully recouped prior losses in numerous ways. Dkt. 204-2 at 104, 117, 123.

Class Counsel later had to move to compel Milliman *again*—this time challenging its (and PHL's) attempt to withhold as privileged numerous highly relevant documents related to the 2017 COI Increase. Plaintiffs prevailed on that motion as well, with the Court holding that none of PHL's communications with Milliman were privileged and requiring them to be produced. Dkt. 178. As a result, PHL and Milliman produced some of the most impactful documents in the

litigation, which featured prominently in Plaintiffs' expert reports and several depositions. Ard Decl. ¶ 10.

Twenty-five highly technical depositions, five expert reports, full class certification briefing, partial summary judgment briefing, and two mediations followed, ultimately resulting in the Settlement that the Court preliminarily approved on August 9, 2023. Ard Decl. ¶¶ 6–18. Plaintiffs' expert reports alone totaled 308 pages, supported by exhibits and appendices exceeding 5,200 pages and including complex MG-ALFA models and detailed spreadsheets. All told, Class Counsel invested in this case over $7 million in time and money on a fully contingent basis, representing over 7,500 hours of work, with the real possibility of getting nothing in return. Ard Decl. ¶¶ 30, 39.

This effort was required due to the high risks posed by this litigation and the complexity of the actuarial assumptions and models involved. The risks included the fact that no state regulator had challenged the 2017 COI Increase. And PHL intended to argue at trial that its 2017 COI Increase was properly designed and backed by Milliman, which PHL described as "one of the world's largest and most respected actuarial firms." Dkt. 276-21, at 2. Also, Plaintiffs alleged that

███████████████████████████████████████████████████████

█████████████████████. Proof of that theory of breach required meticulous legal and actuarial analysis, which would turn on a risky battle-of-the-experts. Ard Decl. ¶ 18.

The risks did not stop there. Even if Plaintiffs prevailed on liability, Plaintiffs faced still further uncertainty on damages. PHL intended to present evidence that damages should be reduced by tens of millions of dollars to account for an alternative COI increase that PHL could have imposed. Dkt. 276-56, at 3. PHL also sought to exclude Plaintiffs' damages expert for opining that COI overcharges are an appropriate measure for damages. *Id.* This risk of a lower-than-expected

recovery is real. In a recent COI class trial in *Meek v. Kansas City Life Insurance Co.*, No. 19-00472-cv (W.D. Mo.), the class sought $18 million in damages, but the jury returned a verdict of only $5 million, which was reduced even further to approximately $900,000 in post-trial proceedings. Ard Ex. 2 (Meek Tr. at 69:9-16; Ard Ex. 3 (Meek verdict form); Ard Ex. 4 (*Meek* Dkt. 329 (post-verdict Order); Ard Decl. ¶ 47; *see also State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). By comparison, the 152% of total settlement benefits compared to COI overcharges achieved here is exceptional.

For these reasons—and considering the exceptional Settlement amounting to 62.8% of all damages in cash, plus $26.2 million in additional benefits—Class Counsel respectfully requests that this Court grant the requested awards, including reimbursement of $1,062,481.04 in expenses, $9,427.91 in expenses incurred by the Settlement Administrator, and a $25,000 service award for Mr. Kenney.

## II.     BACKGROUND

### A.     Class Counsel Investigated the COI Increase and Promptly Filed Detailed Complaints.

In August 2017, PHL announced that it was raising COI rates on "certain Phoenix Accumulator Life and Phoenix Estate Legacy policies." Dkt. 1 ¶ 4. The effective date of the increase varied, with some Class Policies first experiencing it starting in 2017 or 2018 and others not until 2021. Dkt. 1 ¶ 5. PHL notified policyholders that the 2017 COI Increase would entail "an overall increase to cost of insurance rates, as well as progressive increases to cost of insurance rates beginning when an insured reaches age 71 through age 85." Dkt. 1 ¶ 4. Otherwise, PHL disclosed virtually no other details about the increase, leaving policyholders in the dark concerning

the justifications, amount, or impacted classes of insureds. Dkt. 1 ¶ 4. SG—which is highly experienced in representing policyowners seeking recovery of COI overcharges against insurers, Ard Decl. ¶¶ 3–5 & Ex. 1—performed the initial factual and legal investigation. After completing that initial investigation, SG filed this putative class action on April 19, 2018 for Plaintiff Advance Trust. Dkt. 1. James Kenney later joined as a Plaintiff on November 20, 2018. Dkt. 58.

### B. Class Counsel Defeated PHL's Motion to Dismiss.

On August 17, 2018, PHL filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Dkt. 31. After full briefing by Plaintiffs and PHL, the Court denied PHL's motion on March 12, 2019. Dkt. 60. In its denial order, the Court relied on "the well drafted allegations of the Amended Class Action Complaint," holding that "Plaintiffs have alleged facts sufficient to demonstrate specific jurisdiction over PHL." Dkt. 60, at 2, 7.

### C. The Court Appointed SG as Interim Class Counsel.

Less than two months after Plaintiffs and SG defeated PHL's motion to dismiss, Plaintiffs moved to appoint SG as sole interim class counsel. Dkt. 74. In appointing SG, the Court held that SG was "the obvious choice." Dkt. 92, at 7. SG had "engaged in more work" than any other firm "in investigating the claims in this action" and has "more experience litigating COI class action insurance cases." *Id.* The Court touted SG's role in a "prior lawsuit against PHL and its New York affiliate, ultimately obtaining a $130 million settlement and achieving high praise from the presiding judge." *Id.* (citing *Phoenix COI*, 2015 WL 10847814, at *13–22, in which the court lauded SG for its "tenacious prosecution of the case" and its "frankly . . . very good work"). The Court was also swayed by SG's "promise[] to finance this litigation itself, without any support of third-party litigation funders," a promise that SG fulfilled. *Id.* at 8. Accordingly, the Court

concluded that SG "can best serve the interests of the proposed class members . . . for purposes of pre-class certification discovery." *Id.*

### D.   <u>Class Counsel Engaged in Extensive Fact and Expert Discovery.</u>

The Court was right. SG served the best interests of the Class during a hard-fought fact-discovery period that lasted approximately three years.[2] During that time, SG took and defended 19 highly technical fact and Rule 30(b)(6) depositions and issued 84 RFPs, 21 interrogatories, 154 RFAs, and 10 third-party document subpoenas. Ard Decl. ¶ 6. On the other side, PHL issued 83 RFPs, 30 interrogatories, and 14 RFAs. Ard Decl. ¶ 7. PHL did not turn over many key documents in the case without a fight. Ard Decl. ¶ 8. In fact, securing such documents required multiple rounds of meet-and-confers with counsel for PHL, Milliman, KPMG, and other subpoena recipients. Ard Decl. ¶ 8. In those meet-and-confers, SG negotiated issues such as search terms, custodians, date ranges, and software licensing (to view models and data that required special software to access), routinely having to confront and overcome objections to production. Ard Decl. ¶ 8.

When negotiations failed, SG repeatedly had to move to compel on Plaintiffs' behalf. For example, in July 2019, Class Counsel moved to compel Milliman "to produce the actuarial models used to justify the cost-of-insurance ('COI') increase at issue in this litigation in a usable format." Dkt. 98, at 1. After full briefing on the issue—including declarations from multiple experts explaining the significance of the requested models (Dkts. 106–10, 118–20, 126–28)—the Court required Milliman to provide Plaintiffs access to its MG-ALFA software. Dkt. 138. Later, on May 14, 2020, Class Counsel had to move to compel again, this time to require Milliman to produce

---

[2] The Parties served Rule 26(a)(1) initial disclosures on April 30, 2019. Dkt. 73, at 1. Fact discovery concluded on February 23, 2022. Dkt. 194. Before fact discovery started, Plaintiffs also conducted jurisdictional discovery in connection with PHL's Rule 12(b)(2) motion to dismiss. *See* Dkt. 22, at 9 (approving jurisdictional discovery).

documents improperly withheld as privileged. Dkt. 159. Approximately six months later, after full briefing and oral argument, the Court ordered that "***all*** Milliman documents withheld as privileged shall be produced." Dkt. 178 (emphasis added). Because the Court found that ***none*** of PHL's communications with Milliman were privileged, PHL also had to produce all its previously withheld communications with Milliman. Ard Decl. ¶ 10.

These successful motions to compel led to important expert analysis. To carry out that analysis, Plaintiffs' experts, with SG's oversight, devoted dozens of hours to learning the intricacies of the MG-ALFA software and scrutinizing the MG-ALFA models. Ard Decl. ¶ 11. Plaintiffs also hired a separate actuarial expert to ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████ Ard Decl. ¶ 12. By performing this arduous analysis, Plaintiffs' experts uncovered critical errors in PHL's actuarial assumptions and models underlying the 2017 COI Increase. Ard Decl. ¶ 13.

Given the highly technical expert analysis required, expert discovery was an enormous undertaking. Ard Decl. ¶ 14. Plaintiffs designated two opening experts: actuarial expert Howard Zail and damages expert Robert Mills. Ard Decl. ¶ 14. In response, PHL designated actuarial expert Darryl Wagner, regulatory expert Maria Vullo, and "insurance economist" Craig Merrill. Ard Decl. ¶ 14. In rebuttal, Plaintiffs produced reports from Zail, Mills, and regulatory rebuttal expert Jeffrey Angelo. Ard Decl. ¶ 14. Class Counsel took and/or defended depositions for all six experts. Ard Decl. ¶ 15. Collectively, the Parties produced eight expert reports, totaling 530 pages. Ard Decl. ¶ 16. Plaintiffs' expert reports were supported by exhibits and appendices exceeding 5,200 pages and including complex MG-ALFA models and detailed spreadsheets. Ard Decl. ¶ 16. Class Counsel also retained several consulting experts who provided valuable assistance. Ard

Decl. ¶ 17. Overall, Plaintiffs' experts spent over 1,460 hours conducting their vital work in this case. Ard Decl. ¶ 17.

### E. Class Counsel Fully Briefed Class Certification and Partially Briefed Summary Judgment and *Daubert* Motions.

In addition to extensive briefing in the pre-discovery and discovery phases of the litigation, Class Counsel also fully briefed Plaintiffs' motion for class certification. Dkts. 200–05, 224–27. That briefing included a 25-page opening brief and a 10-page reply brief, supported by 38 exhibits consisting of 939 pages. *Id.* PHL opposed Plaintiffs' motion, filing a 25-page opposition brief, supported by 35 exhibits consisting of 1,286 pages. Dkts. 208–14, 216–21. The Parties settled shortly after they filed their class certification briefs and before the Court could decide Plaintiffs' motion.

The Parties also partially briefed summary judgment and *Daubert* motions to exclude Plaintiffs' experts' opinions. On November 10, 2022, PHL filed a letter brief regarding its arguments for partial summary judgment, along with a 24-page Rule 56.1 Statement. Dkts. 231–34. PHL also filed the same day a letter brief setting forth its arguments for excluding opinions of Plaintiffs' experts. Plaintiffs responded just five days later with two opposition letter briefs and a 62-page Rule 56.1 Counter Statement. Dkts. 238–44.

### F. The Class's Damages in This Action Stopped Accruing in 2021.

While the Parties were litigating this case, PHL implemented the 2021 COI Increase. Ard Decl. ¶¶ 42–43. Plaintiffs sought leave from this Court to add allegations challenging the 2021 COI Increase in this action, but the Court denied that request. Dkts. 177–78. Plaintiff James Kenney, on behalf of himself and all others similarly situated, subsequently filed a separate case challenging the 2021 COI Increase in the United States District Court for the District of Connecticut, *Kenney v. PHL Variable Ins. Co.*, No. 3:22-cv-00552-OAW (D. Conn.) (the

"Connecticut Action"). The proposed Settlement expressly carves out, and does **not** release, any claims alleged in the Connecticut Action. The primary effect of the 2021 COI Increase on this case is that the COI damages resulting from the 2017 COI Increase ended in 2021. Total damages here (exclusive of pre- or post-judgment interest) became **fixed** at $29,435,208, regardless of the time to trial. Dkt. 265 ¶ 3.

G.     <u>Class Counsel Negotiates an "Excellent" Settlement.</u>

On November 15, 2022, the same day Plaintiffs filed their summary judgment and *Daubert* opposition letter briefs and Rule 56.1 Counter Statement, the Parties reached an agreement to settle this litigation. Ard Decl. ¶ 22; Dkt. 264 ¶ 8. That agreement came after years of negotiation and two separate mediations. Ard Decl. ¶ 22. The first mediation was conducted at the offices of Professor Eric D. Green on January 20, 2022. Ard Decl. ¶ 23; Dkt. 264 ¶ 7. The second was conducted on November 8, 2022, also at Professor Green's offices. Ard Decl. ¶ 23; Dkt. 264 ¶ 8. On both occasions, the Parties provided Professor Green with a substantial amount of information regarding the key issues in the case, including relevant briefing. Ard Decl. ¶ 23; Dkt. 264 ¶¶ 7–8. After a vigorous, arms-length debate at the second mediation about all aspects of the merits of the case and damages, Professor Green made a "mediator's proposal" and gave the Parties until November 15, 2022 to accept or reject it. Ard Decl. ¶ 24; Dkt. 264 ¶ 8. After clarifying certain aspects of the proposal, the Parties ultimately accepted it. Ard Decl. ¶ 25; Dkt. 264 ¶ 8. For the following three months, the Parties negotiated and then agreed to a long-form settlement. Ard Decl ¶ 25.

Professor Green declares that "the settlement is an excellent result for the . . . class that reflects the strenuous negotiations between highly professional counsel to secure a result for the

class without the risks of continued litigation where their claims could have been denied at trial or on appeal." Dkt. 264 ¶ 12. For the Class, the Settlement awards three main benefits:

1. **CASH**: A cash Settlement Fund of up to $18,500,000, which is 62.8% of all COI overcharges collected from the Class Policies. The cash fund decreases by an agreed *pro rata* formula if any Class Member opts out. As of October 6, 2023, no Class Members had opted out (or objected).

2. **COI RATE INCREASE FREEZE**: A two-year moratorium on any new COI rate scale increases on the Class Policies, starting on each policy's first policy anniversary date falling on or after January 1, 2021.[3] Thus, even if PHL suffers from a future change in cost factors that would otherwise permit a COI rate increase—including any alleged surge in mortality due to the COVID-19 pandemic—PHL will not increase COI rate schedules.

3. **POLICY VALIDITY GUARANTEE**: PHL has agreed not to challenge the validity and enforceability of any Class Policies on STOLI grounds or misrepresentations in the application for such policies.

Ard Decl. ¶ 26; Dkt. 263-2. Plaintiffs' expert James Rouse—who has extensive experience in the life-insurance industry and with longevity-based products—has opined that the non-monetary relief is worth $26,180,216 to the Class. Rouse Decl. ¶¶ 7, 80. Specifically, the COI Rate Increase Freeze is worth $18,088,329, and the Policy Validity Guarantee is worth $8,091,888. Rouse Decl. ¶¶ 71–81.

## III. ARGUMENT

### A. Class Counsel's Fee Request Is Reasonable.

#### 1. Class Counsel Is Entitled to Fees from the Common Fund.

The Supreme Court has long recognized that a lawyer who obtains a recovery "for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purposes of this doctrine are to provide "just compensation for class counsel," "encourage skilled counsel to represent" the class, and

---

[3] The COI rate freeze does not apply if government regulators request that PHL increase COI rates. Class Counsel is unaware of any government regulator anywhere, at any time ever, having previously requested that a carrier raise COI rates on its owners of universal life insurance.

"discourage future alleged misconduct of a similar nature." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp 3d 394, 416 (S.D.N.Y. 2018) (citation omitted).

## 2. **The Requested Fee Is Reasonable under the Preferred Percentage Method.**

### a. The Percentage Approach Is Favored

Under the percentage method, the "court sets some percentage of the recovery as a fee." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts routinely find that the percentage of the fee method is the preferred means to determine a fee because it "directly aligns the interests of the class and its counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citation omitted); *see also Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964, 2019 WL 402854, at *8 (S.D.N.Y. Jan. 31, 2019) (noting the "strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery" (citation omitted)). The percentage-of-the-fund approach is consistent with how attorneys are compensated in non-class contingency cases and recognizes that the quality of services is best measured by results achieved. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) (describing how this results-based method "better aligns the incentives of plaintiffs' counsel with those of the class members" and "accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel").

Class Counsel's work, performed entirely on a contingent basis, enabled the Class to recover ***62.8% of the alleged overcharges*** in cash alone. The 62.8% cash recovery approximates the 68.5% of historical overcharges obtained in *Phoenix COI*, which the court deemed "one of the most remunerative settlements this court has ever been asked to approve." 2015 WL 10847814, at *11. Though the percentage of historical overcharges here is slightly less, in *Phoenix COI* the COI

increase was still in effect and overcharges were continuing. Here, overcharges arising from the 2017 COI Increase have stopped, and damages are capped. That makes the 62.8% settlement-to-damages ratio even more remarkable. The Settlement here also far exceeds the 42% of alleged overcharges in total settlement value secured in *37 Besen Parkway, LLC v. John Hancock Life Insurance Co.* (*Hancock COI I*), No. 15-cv-9924, Dkt. 164, at 20:9–11 (S.D.N.Y. Mar. 18, 2019), which, the court called "quite extraordinary."

> b.  A Fee of 13.8% of Settlement Benefits Is Reasonable

Here, Class Counsel is seeking a fee of $6,166,667, which is 13.8% of the Settlement benefits, or (using a less accepted and more conservative method) one-third of the Cash Fund in isolation. The total Settlement value, including non-monetary and monetary benefits, is $44.7 million. Ard Decl. ¶ 28. The Cash Fund is $18.5 million. Plaintiffs' financial COI increase modeling expert (Mr. Rouse)—who has deep expertise in longevity markets—values the non-monetary relief at approximately $26.2 million. Rouse Decl. ¶¶ 7, 80. The COI Rate Increase Freeze is especially valuable, making up approximately $18.1 million of the of the total non-monetary benefits. Rouse Decl. ¶¶ 71–73.

In calculating the overall settlement value, courts include the value of both the monetary and non-monetary benefits. *See* Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges 35 (3d ed. 2010) ("Courts use two methods to calculate fees for cases in which the settlement is susceptible to an objective evaluation. The primary method is based on a percentage of the actual value to the class of any settlement fund ***plus the actual value of any nonmonetary relief***." (emphasis added)).[4] In COI

---

[4] *See also Sheppard v. Consol. Edison Co. of N.Y.*, No. 94-CV-0403, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (approving fee award measured as a percentage of the "total settlement," including $6.745 million in monetary

litigation, that includes the value of what was achieved here: the COI Rate Increase Freeze and the Validity Confirmation. *See Phoenix COI*, 2015 WL 10847814, at *15 & nn.7–8 ("In calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of the both the monetary and non-monetary benefits conferred on the Class." (collecting authorities)).

Courts in the Second Circuit and beyond regularly approve fee awards using percentages that are substantially higher than the percentage requested here. And even considering the cash component alone, courts in this district frequently award one-third of the cash fund. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060, 2022 WL 4554858, at *10–11 (S.D.N.Y. Sept. 29, 2022) (awarding one-third of $165 million cash settlement fund as "reasonable within this circuit"); *Mohney*, 2009 WL 5851465, at *5 ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.3% of a $510 million cash settlement fund); *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 3:07-md-1894, 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (awarding 33.3% of $297 million cash settlement fund).[5]

_____

relief and "an estimated $5 million in non-monetary, injunctive relief"); *Simerlein v. Toyota Motor Corp.*, No. 3:17-cv-1091, 2019 WL 2417404, at *24–25 (D. Conn. June 10, 2019) (evaluating reasonableness of fee request as percentage of the "total settlement," including non-monetary relief valued by an expert); *Sykes v. Harris*, No. 09 Civ. 8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (evaluating and approving fee award as percentage of monetary and non-monetary relief); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) ("The value of the injunctive relief here is a highly relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees."); *Tussey v. ABB, Inc.*, No. 06-CV-04305, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) (percentage of "benefit should be based on both the monetary and the non-monetary value of the settlement").

[5] *See also In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866, Dkt. No. 727, at 2 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, Dkt. 1180 (D. Mass. July 18, 2018) (awarding 33.3% of $72.5 million settlement); *In re CRT Antitrust Litig.*, No. C-07-5944, 2016 WL 183285, at *2–3 (N.D. Cal. Jan. 14, 2016) (awarding 30% of $127.5 million settlement); *In re Apollo Group Inc. Sec. Litig.*, No. CV 04-2147, 2012 WL 1378677, at *9 (D. Ariz., Apr. 20, 2012) (awarding 33.33% of $145 million settlement fund); *see generally In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7481292, at *2 (citing with approval *Velez v. Novartis Pharms. Corp.*, No. 04-CV-9194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("The federal courts

The requested fee is also less than what Class Counsel could obtain on the open market. "[M]arket rates, where available, are the ideal proxy for . . . compensation." *Goldberger*, 209 F.3d at 52; *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 422 (2d Cir. 2010) (focus should be "on mimicking a market"); *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ.1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) ("[T]he percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model . . . ."). Class Counsel regularly takes high-stakes, non-class commercial cases on a contingent-fee basis (*e.g.*, patent, legal malpractice, antitrust, etc.), and it typically negotiates contingent-fee arrangements in such cases, where the firm advances expenses, starting at 40% of the gross sum recovered, with increases to 45% and 50% depending on the time of settlement and trial. Ard Decl. ¶ 44. "This fact is highly relevant to determining the appropriateness of the award because the Court's ultimate task is to 'approximate the reasonable fee that a competitive market would bear.'" *Phoenix COI*, 2015 WL 10847814, at *17; *see also Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (approving one-third fee request partly because clients "typically pay one-third of their recoveries under private retainer agreements").

### 3. A Lodestar "Crosscheck" Confirms Class Counsel's Request Is Reasonable.

When courts award a percentage of the fee, they may perform a lodestar "cross-check" to determine whether the proposed fee is reasonable. *Goldberger*, 209 F.3d at 50. Using the

---

have established that a standard fee in complex class action cases . . . where plaintiffs['] counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater."); *id.* (citing with approval T. Eisenberg, G. Miller & R. Germano, Attorneys' Fees in Class Actions: 2009–2013, 92 N.Y.U. L. Rev. 937, 950 tbl. 2 (2017) (study finding the mean and median percentage fees in class cases in the Southern District of New York from 2009 to 2013 were 27% and 31%, respectively)).

percentage method ensures that the cross-check does not serve as a perverse "incentive for counsel to prolong litigation and maximize billable hours to arrive at a lodestar that does not operate as a cap on a percentage award." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 729 (2d Cir. 2023) (Jacobs, J., concurring). Courts in this Circuit "regularly award lodestar multiples of up to eight times lodestar." *Pantelyat*, 2019 WL 402854, at *10 (approving multiplier of 4.89) (citation omitted); *see also Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12cv4216, 2014 WL 3778173, at *14 (S.D.N.Y. July 31, 2014) ("Courts award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.").

The requested fee award is equal to a lodestar multiplier of 1.02. Ard Decl. ¶ 37. This is far below the typical lodestar awarded in contingent class actions and, more specifically, COI class actions. *See, e.g., Phoenix COI*, 2015 WL 10847814, at *18 (approving 4.87 multiplier); *Hancock COI I*, Dkt. 164 at 19:14–20:11 (approving multiplier of 6.92); *State Farm COI*, 2023 WL 5125113, at *5 & n.8 (approving fee award of one-third of $325 million, with lodestar multiplier of 5.75); *In re Credit Default Swaps Antitrust Litig.*, No. 13md2016, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (awarding $253 million in fees, in a case that settled before class certification, with a lodestar "multiple of just over 6"); *Osberg v. Foot Locker, Inc.*, No. 07-cv-1358, Dkt. 423 (S.D.N.Y. June 8, 2018) (awarding one-third of $290 million settlement fund, with 4.8 multiplier).

Here, Class Counsel spent more than 7,500 hours representing a lodestar of $6,041,207.50 and advanced $1,062,481.04 in expenses. Ard Decl. ¶¶ 30–31, 39.[6] Class Counsel's hourly rates are reasonable. The rates for Class Counsel and its staff who billed significant amounts of time to this case are lower than peer law firms litigating matters of similar magnitude. In a nationwide survey of AmLaw 50 law firms performed by PwC Product Sales, LLC and issued in June 2023, the median standard billing rate for equity partners was $1,463 and for associates was $933. Ard Decl. ¶¶ 34–35. Here, four of the seven **partners** working on this matter have billing rates of $800, which is **below** the third-quartile standard rate for **associates**. Ard Decl. ¶ 36. And every partner on this matter bills below the third quartile standard rate for equity partners. Ard Decl. ¶ 36. Likewise, every associate's rate is below the third quartile rate for associates. Ard Decl. ¶ 36. Courts routinely find SG's rates reasonable. *See, e.g., Hancock COI I*, Dkt. 164 at 19:6–13 (accepting SG's rates as reasonable); *Phoenix COI*, 2015 WL 10847814, at *18 (finding SG's rates "reasonable" and "comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude"). The cross-check is even more reasonable considering that "after final approval there will be significant additional tasks relating to the Settlement, lowering the lodestar multiplier even further." *Pearlstein*, 2022 WL 4554858, at *10.

### 4. The Goldberger *Factors Support Class Counsel's Fee Request.*

The "'*Goldberger* factors' ultimately determine the reasonableness of a common fund fee," *Wal-Mart*, 396 F.3d at 121. Those factors, which the Court weighs in its discretion, are:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

---

[6] Lodestar is calculated at current hourly rates. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989) (endorsing "an appropriate adjustment for delay in payment" by applying "current" rate); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (rates "should be current rather than historic" (cleaned up)); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment").

*Goldberger*, 209 F.3d at 50. Each of these factors confirms that the requested fee is reasonable.

### a. Labor Expended by Counsel (*Goldberger* Factor 1)

The first *Goldberger* factor, which addresses the "the time and labor expended by counsel," strongly supports approval of the requested fee. Class Counsel spent over 7,500 hours prosecuting this case for more than five-and-a-half years. Ard Decl. ¶ 30. And that number of hours will increase as Class Counsel prepares for final approval proceedings and administers the Settlement. Ard Decl. ¶ 37.

### b. Magnitude and Complexity of the Litigation (*Goldberger* Factor 2)

The second *Goldberger* factor, which addresses "the magnitude and complexities of the litigation," also strongly supports approval of the requested fee. To call this litigation complex would be an understatement. The 2017 COI Increase affected nearly 5,000 policies, and the technical details of PHL's redetermination, mortality, and financial modeling required an experienced team of lawyers and experts to gather, study, and reverse engineer. PHL has also aggressively challenged liability, damages, and class certification. *E.g.*, Dkts. 209–10, 231–36.

### c. The Risk of the Litigation (*Goldberger* Factor 3)

The Second Circuit has identified "the risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable fee award]." *Goldberger*, 209 F.3d at 54 (citation omitted); *see also In re Telik*, 576 F. Supp. 2d at 592 ("Courts have repeatedly recognized that 'the risk of the litigation' is a pivotal factor") (citation omitted). Risk can vary based on many factors, including the novelty and complexity of the claims, and the existence or stage of a relevant government action. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010).

The risks Class Counsel faced here were high. Policyowners lose COI cases on the pleadings, *see, e.g.*, *Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*, 853 F. App'x 451 (11th Cir.

2021), class certification, *see, e.g., Taylor v. Midland Nat'l Life Ins.*, No. 4:16-CV-00140, 2019 WL 7500238 (S.D. Iowa May 3, 2019), summary judgment, *see e.g., Norem v. Lincoln Ben. Life. Co.*, 737 F. 3d 1145 (7th Cir. 2013), and recently lost 95% of damages at trial, *Meek v. Kan. City Life Ins. Co.*, No. 19-00472-CV (W.D. Mo.). Trial is especially risky where it is, as here, a battle of the experts. *See State of W.V.*, 314 F. Supp. at 743–44 ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited . . . ."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

Damages were also fraught with risk. PHL intended to present evidence that damages should be reduced by tens of millions of dollars to account for a COI increase that PHL could have imposed. Dkt. 276-56, at 3. PHL also sought to exclude Plaintiffs' damages expert for opining that COI overcharges are an appropriate metric for damages. *Id.* As explained above, the risk of a lower-than-expected recovery is real. *See supra* Introduction (detailing COI class trial in which the class sought $18 million in damages but recovered only $900,000). And trial would not have been the end of the road. If Plaintiffs succeeded at trial, this case would likely be tied up in years of post-trial briefing and appeals.

Class Counsel undertook enormous risk in taking on this case—over $1 million in advanced expenses and over 7,500 hours in attorney time—all of which could have resulted in a substantial loss. Ard Decl. ¶¶ 30, 39. Courts in the Southern District and the Second Circuit have recognized that this type of contingent risk is an "important factor" in evaluating the reasonableness of a fee. *City of Providence vs Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL

1883494, at *14 (S.D.N.Y. May 9, 2014); *Sukhnandan*, 2014 WL 3778173, at *11 (describing such risk as "the principal, though not exclusive, factor" (citation omitted)).

The risk was also high because Class Counsel was up against an insurance company, backed by multiple layers of parent companies and private-equity investors. Relying on those resources, PHL hired highly regarded litigation counsel from McDowell Hetherington, which are "among the most capable and experienced lawyers in the country in these kind of cases." Dkt. 264 ¶ 12. *See In re Abbott Labs. Sec. Litig.*, No. 92-C-3869, 1995 WL 792083, at *10 (N.D. Ill. July 3, 1995) (describing risk of litigating class action on contingency given "the formidable and nearly limitless resources of the opposition's nationally prominent law firms, and the amount of economic and personnel investment required"). The risk to SG was compounded because it spent more than five years litigating this case. The delay in payment weighs strongly in favor of the requested fee. *See In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454, at *20 ("A significant factor in awarding the full one-third [33-1/3%] requested is the delay in payment."). The only certainty from the outset of this litigation was that Class Counsel would receive no fee or expense award, and would suffer an enormous write-off, if Plaintiffs lost the case.

d.    The Quality of the Representation (*Goldberger* Factor 4)

"[T]he quality of representation is best measured by results . . . ." *Goldberger*, 209 F.3d at 55. The "result obtained for the Class" is sometimes referred to as "[t]he critical element in determining the appropriate fee to be awarded class counsel out of a common fund." *Maley*, 186 F. Supp. 2d at 373 (citation omitted); *see also Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 378 (S.D.N.Y. 2019) (identifying "degree of success" as the "most critical factor") (cleaned up)). The results here are excellent—after five-and-a-half years of hard-fought litigation, SG negotiated a Settlement with a cash component alone covering 62.8%

of the damages that could be awarded at trial, as well as non-monetary benefits with substantial additional value of $26.2 million. *See In re Bisys Sec. Litig.*, No. 04 Civ. 3840, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (one way to measure result is to compare the "extent of possible recovery with the amount of actual verdict or settlement" (citation omitted)).

e.      <u>Requested Fee in Relation to the Settlement (*Goldberger* Factor 5)</u>

The fifth *Goldberger* factor, which addresses "the requested fee in relation to the settlement," also strongly supports approval. "[T]he fact that the requested fee is comparable to fees that courts have found reasonable . . . weighs in favor of the fee's reasonableness." *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010). As discussed, the proposed award is well within the range of fees found to be reasonable and awarded by courts in this Circuit.

f.      <u>Public Policy Considerations (*Goldberger* Factor 6)</u>

The final *Goldberger* factor, which addresses "public policy considerations," supports approval of the requested fee. Public policy strongly favors incentivizing skilled private attorneys to undertake this type of litigation. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("[T]o attract well-qualified plaintiffs' counsel who are able to take a case to trial . . . it is necessary to provide appropriate financial incentives.").

**5.      *The Reaction of the Class Supports the Requested Fee.***

The Settlement Notice informed Class Members that Class Counsel would move the Court for an award of attorneys' fees up to one-third of gross benefits provided to the Class and that Class Members could object to this request. Dkt. 266, at 59–74 (Exs. B-C). Here, Class Counsel is seeking less than that—just 13.8% of the gross benefits. And as of October 6, 2023, no Class Member has objected to Class Counsel's fee. Ard Decl. ¶ 38. The lack of objections, at least to

date, weighs in favor of the requested award. *See Pearlstein*, 2022 WL 4554858, at \*3 (citing small number of objections).

## B.   <u>Class Counsel's Reasonable and Necessary Expenses Should Be Reimbursed.</u>

Class Counsel also requests reimbursement of $1,062,481.04 for out-of-pocket expenses reasonably and necessarily incurred in prosecuting this action, and $9,427.91 in expenses incurred by the Settlement Administrator. Ard Decl. ¶¶ 39–41. "[C]ourts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ. 5450, 2018 WL 3863445, at \*1 (S.D.N.Y. Aug. 14, 2018) (citation omitted).

The expenses are described in the papers filed in support of this application. Ard Decl. ¶ 39. These expenses were reasonable and necessary and were spent for the direct benefit of the Class. Ard Decl. ¶ 39. They are the type of "expenses typically billed by attorneys to paying clients in the marketplace[,] . . . includ[ing] fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with the litigation." *See In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7481292, at \*2 (reimbursing such costs). The fact that Class Counsel was willing to spend its own money (using no outside litigation funding (Ard Decl. ¶ 40)), where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary.

Class Counsel also requests that the Court approve the continued payment of Settlement Administration Expenses, as the Court ordered at preliminary approval. Dkt. 271 ¶ 9. The Settlement Administrator has incurred $9,427.91 through October 9, 2023 and will incur additional

expenses as Settlement payments are distributed. Ard Decl. ¶ 41. This includes the amounts incurred in connection with settlement administration, including the class notice. Ard Decl. ¶ 41.

### C.  <u>A Service Award for James Kenney Is Appropriate.</u>

Class Counsel seeks a service award of $25,000 for plaintiff James Kenney, who devoted significant time working with Class Counsel, gathered hundreds of documents, spent many hours responding to paper discovery with counsel, prepared over multiple days for his deposition, offered credible and compelling deposition testimony, and has stayed actively involved throughout this case. Ard Decl. ¶¶ 19–21. "Courts consistently approve awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they endure during litigation." *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118m, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012). The requested award is lower than those awarded in other complex class actions,[7] and it represents a "minuscule portion" of total settlement value. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018).

## IV.  CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that this Court award (1) its requested fees in the amount of $6,166,667 plus a pro rata share of the interest earned on the Settlement Fund, (2) reimbursement of costs and expenses in the amount of $1,062,481.04, (3) expenses continuing to be incurred by the Settlement Administrator, including $9,427.91 to date, and (4) a $25,000 service award for Plaintiff James Kenney.

---

[7] *See, e.g., Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (granting $100,000 each to two class representatives and $50,000 to six others); *Pearlstein*, 2022 WL 4554858, at *11 (awarding $100,000 each to two class representatives).

Dated: October 9, 2023

SUSMAN GODFREY LLP

*/s/ Seth Ard*
Seth Ard
Ryan Kirkpatrick
Komal Patel
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.: 212-336-8330
Fax: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
kpatel@susmangodfrey.com

Steven G. Sklaver (*pro hac vice*)
Krysta Kauble Pachman (*pro hac vice*)
Michael Adamson
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com
kpachman@susmangodfrey.com
madamson@susmangodfrey.com

*Interim Class Counsel*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all parties through their counsel of record via the Court's CM/ECF system, on October 9, 2023.

_/s/ Michael Adamson_
Michael Adamson